CLARA GEISLER, BY HER HUSBAND AND NEXT FRIEND, FREDERICK GEISLER, PLAINTIFF IN ERROR, v. WILLIAM A. BROWN, DEFENDANT IN ERROR.

1. **Libel:** A libel is a malicious publication against a person, tending to blacken his reputation, or to expose him to public hatred, contempt, or ridicule.

2. ———: PLEADING. But it is not every false charge against a person which is sufficient to sustain an action for damages. The plaintiff must aver in his petition and prove on the trial that he has sustained some special damages from the publication of the alleged libel, unless the words are actionable *per se.*

3. ———: ———. Where the words are not actionable *per se* the plaintiff must set forth in his petition facts showing wherein he has sustained damages.

4. ———: ———. When the terms of an alleged libel are general or indefinite, the petition must contain averments that the alleged libel was published *of and concerning the plaintiff.*

5. ———: ———. The mere statement in a petition that the plaintiff has sustained damages by loss of friends, etc., where there is no statement *of facts* from which it is apparent that the defendant is liable for damages, will not sustain the action.

THIS was an action for libel brought in the district court of Otoe county. The petition was as follows:

"Now comes the said plaintiff Clara Geisler by her husband and next friend Frederick Geisler, and says that she is a married woman and that Frederick Geisler is her husband, and that they now are, and were, and had been for a long time living happily together as man and wife at and before the grievances hereinafter mentioned, and the said plaintiff says that she is a good, true and honest, kind and upright woman, and as such has always behaved and conducted herself as hereinafter mentioned and until the committal of the several grievances by the said defendant as hereinafter mentioned was always reputed esteemed and accepted by and among all her neighbors, and other good and worthy citizens to whom she was in any way known to be a person of good name, fame, and credit, and had never been suspected or charged with the offenses or misdemeanors charged and imputed to her by the said defendant or of other offenses or misconduct. That on the twelfth day of July, A.D. 1873, the said defendant, William A. Brown, was the publisher and owner of a newspaper published at Nebraska City, Nebraska, commonly known and called *The Daily Nebraska Press*, which said newspaper was and is of general circulation in said Nebraska City and Otoe county; that on the said twelfth day of July, A.D. 1873, at said Nebraska City and Otoe county and State of Nebraska aforesaid, the said defendant, William A. Brown, published and caused to be printed and circulated in his said paper aforesaid the following willful, false, scandalous, and malicious libel of and concerning her in her capacity of step-mother to the children of the said Frederick Geisler, she, the said plaintiff, then and now being the second wife of the said Frederick, and the said step-mother of the said children of said Frederick by his first wife, that is to say:

"*An Inhuman Step-mother—She Beats Her Child Over the Head with a Club—Is it not Time that Something was Done With that Girl ?*

" The case of kidnapping and pistol shooting has gone quite far enough in our opinion. This case of the little girl had better be lawfully settled before any more blood-shed is caused, and we shall insist upon the proper officers taking this matter in hand and settling it. Peace can never be obtained the way things are carried on now, and men are in danger of losing their lives and the offenders being constantly in 'limbo.'

" Last night Mrs. Geisler beat her little step-daughter most unmercifully with a club as large as a man's wrist, striking her over the head and making the blood flow freely. The little girl ran away from her as soon as she could free herself, and went to marshal Thomas' house weeping bitterly, her clothes saturated with blood and the wounds on her head still bleeding profusely. The marshal was not at home, so she went to the store of C. H. Mickelson, and from there over to judge Dickey's drug store. The judge told sheriff Moore to take the girl to Mickelson's house and keep her there until called for. This Mickelson will probably do if Geisler does not get her away.

" It is time that Geisler and his brutal wife were put under bonds not to whip that girl, and it is time some one took care of the little girl, who is not over nine years of age. There has been trouble enough over her, and we hope the authorities will put a stop to it."

Which publication is and was false, slanderous, and malicious; this plaintiff says that Frederick Geisler did have a daughter by his first wife, whose name was and is Louise; that she is about eight years of age; that the plaintiff always and at all times treated her kindly and in an affectionate and motherly manner, and never struck her, punished her, or abused her in any manner; that by

said false, malicious, and scandalous libel, so published by said defendant willfully and maliciously, this plaintiff has been greatly damaged by being brought into public ridicule, hatred, and contempt, and in a great degree banished and shunned by her former friends and associates, and her feelings, and the grief occasioned by said false and malicious publication offended her, been injured in her health, and good name and fame in the sum of sixty thousand dollars." The defendant demurrer to the petition, and upon argument before GANTT, J., sitting in the district court, the demurrer was sustained and judgment rendered against the plaintiff. The cause came here by proceedings in error, and was heard and decided at the January term, 1875. The papers having been mislaid, an opinion was not filed until the present term. Maxwell's Digest, 295.

*Mason & Whedon*, for plaintiff in error.

Words when written or printed are actionable, which would not be if spoken. In a complaint seeking to recover damages for the publication of a libel, extrinsic averments are not necessary when the words used, giving them their natural construction, tend to injure the reputation of the complainant and expose him to hatred, contempt, or ridicule. *Moore v. Bennett*, 48 N. Y., 472. *Chenery v. Goodrich*, 98 Mass., 224. A libel is defined to be a malicious defamation expressed in printing or writing, or by signs, pictures, etc., tending to injure the reputation of another, and thereby expose such person to public hatred, contempt, or ridicule. 2 *Selw.*, N. P., 1061. Townsend on Slander and Libel, Sec. 176 and cases cited. A publication, to be libelous, must tend to injure the plaintiff's reputation, and expose him to public hatred, contempt, or ridicule. A publication may be libelous without imputing a crime *per se*. *Armentrout*

*v. Moranda*, 8 Blackf., 426.    *Johnson v. Stebbins*, 5 Ind.,
364.    This publication contains a charge of inhumanity;
calls the plaintiff *an inhuman step-mother;* charges her
with beating her child over the head with a club until
its clothes were saturated with blood.    Surely here is a
charge of gross inhumanity, depravity, and cruelty,
and misconduct, as a step-mother, which could not fail
to injure the plaintiff's reputation and good name.    It
is clearly agreed that not only written or printed scan-
dal comes within the notion of libel, but it may be ap-
plied to any defamation whatsoever, expressed either by
signs or pictures, and this species of defamation is termed
written scandal, and thereby receives an aggravation in
that it is presumed to have been entered upon with
coolness and deliberation, and to continue longer and
propagate wider and further than scandal uttered by
words.

*C. W. Seymour* and *Calhoun & Croxton* for defen-
dant in error.

The gist of an action for libel is pecuniary loss, not
for injury to reputation, and if the language published
has not occasioned the plaintiff pecuniary loss, then no
action can be maintained.    *Townshend* 101, 106, 107.
*Maitland v. Goldney*, 2 East, 426.    When the language
brings a party into public hatred, disgrace, or degrades
him, exposes him to ridicule, contempt, or tends to
vilify him or injure his character, or diminish his repu-
tation, the party must show "special damages" and
these "special damages" must be set out in the petition.
*Stone v. Cooper*, 2 Denio, 299.    1 Starkie on Slander, 2.
*Woodbury v. Thompson*, 3 N. H., 194.    *Terwilliger v.
Wands*, 17 N. Y., 54.    Malice must be stated and pro-
ven.    Townshend, 607.    *Fowles v. Bowen*, 30 N. Y., 26.
*Commonwealth v. Clap*, 4 Mass., 163.

MAXWELL, J.

The charge in the petition is that the defendant published an article relating to the plaintiff entitled "AN INHUMAN STEP-MOTHER." "*She beats her child over the head with a club.*"

In *Cooper v. Stone*, 24 Wendell, 434, Cowen, J., defines a libel to be any malicious publication against a person, "tending to blacken his reputation, or expose him to public hatred, contempt, or ridicule." But it is not every false charge against an individual which is sufficient to sustain an action for damages. In order to authorize a recovery the plaintiff must aver in his petition, and prove on the trial, that he has sustained some special damages from the publication of the alleged libel, unless the nature of the charge is such that the words are actionable *per se*. And where the words are not actionable *per se* it is not sufficient to simply allege that the party has sustained damages, but a party must state in his petition *wherein* he has sustained damages. A writing charged to be a libel may be expressed in such clear and unambiguous terms, that the court wants no circumstances to make it clearer than it is of itself. But if the terms of the alleged libel are general, or indefinite, there must be necessary averments in the petition showing that the libel was published *of and concerning the plaintiff*. The petition in this case is defective in that regard, and there is no allegation therein that the defendant charged the plaintiff with *willfully* beating the child. The petition entirely fails to show *how* the plaintiff was injured by the alleged libel, and the mere statement that she has sustained damages by the loss of friends, etc., where there is no statement of facts from which it is apparent that the defendant is liable for damages, will not sustain the action. The judgment of the district court is therefore affirmed.

JUDGMENT AFFIRMED.