## MISSOURI, K. & T. R. CO. v. WATKINS.

No. 8442—Opinion Filed Jan. 27, 1920.

Rehearing Denied March 16, 1920.

(Syllabus by the Court.)

### 1. Libel and Slander—Malice—Burden of Proof.

In an action for libel, where plaintiff has established that defamatory matter has been published by the defendant concerning him, he is entitled to recover unless the "fact" (the publication itself) and the testimony rebut the presumption of malice. The burden of adducing evidence to rebut such presumption is upon the defendant. If the fact and the testimony rebut the presumption of malice, the burden then rests upon the plaintiff to show express malice in order to recover.

### 2. Same—Question for Court—Direction of Verdict.

In an action for libel, seeking general damages alone, when the evidence is uncontroverted, it becomes the duty of the court to determine whether or not there is any evidence adduced upon the trial which tends to prove malice. If from the uncontroverted testimony there is no malice shown, then there exists no cause of action, and it becomes the duty of the court to direct a verdict for the defendant.

### 3. Appeal and Error—Verdict—Sufficiency of Evidence.

Where there is no evidence reasonably tending to establish a material issue submitted to the jury under the instructions of the court, which the jury must have found in favor of the prevailing party in order to have returned the verdict, the verdict will be set aside.

### 4. Libel and Slander—Petition — Special Damages.

In an action for libel, special damages must be alleged and proved, and it is error to instruct the jury on such damages in the absence of such allegation and proof.

Error from District Court, Pottawatomie County; Chas. B. Wilson, Jr., Judge.

Action by J. L. Watkins against the Missouri, Kansas & Texas Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Clifford L. Jackson, W. R. Allen, and M. D. Green, for plaintiff in error.

W. N. Maben and W. S. Pendleton, for defendant in error.

PITCHFORD, J. Defendant in error, J. L. Watkins, hereinafter called the plaintiff, instituted this action against the plaintiff in error, hereinafter called the defendant, in the district court of Pottawatomie county, for damages on account of alleged false and malicious information given by the defendant in a letter to the Oregon Short Line Railway Company with reference to the plaintiff's character, qualifications, and fitness as a railroad employe and his standing with the defendant as a railroad brakeman. This letter was written in response to an inquiry made of defendant by written request signed by the plaintiff at the instance of the said Oregon Short Line Ry. Co., and forwarded by that company to the defendant's superintendent at Muskogee, Okla. It was alleged by the plaintiff that this communication was a willful, wicked, false, and malicious libel; that by reason thereof the plaintiff was relieved of his temporary employment with the Oregon Short Line Ry. Co., and that his standing and character as a railroad workman have been ruined, it being impossible for him to secure employment with any other railroad company. Plaintiff claims that he has been damaged in the sum of $20,000.

Defendant answered, alleging said letter was written in good faith in response to a request for information, and without any malice, ill will, or evil intent toward the plaintiff, and that the same was a privileged communication. A verdict was returned by the jury in favor of the plaintiff for $1,500. Defendant appeals.

The evidence discloses that plaintiff first began to work for the defendant company in 1900, but the length of time of his service is not stated. We find, however, that in 1901 he was working for the H. & T. C., at Ennis, Texas. In December, 1908, he re-entered the service of the defendant company at Denison, Texas, and resigned on July 14, 1910. During July, 1910, plaintiff was suspended by the defendant company on account of violating rule "G", which appears to be universally understood in railroad circles to mean drunkenness while in the company's service. Plaintiff asked for an investigation of this charge, the investigation was made, and plaintiff was re-instated after being suspended four or five days. He then resigned, as above stated, on the 14th of July. He was next employed by the Frisco at Fort Worth, Tex., in the spring of 1911, but was cut off after the stock rush, after working about six weeks. This company gave him a service letter, which was worn out or lost. He then went to work for the F. W. & D. at Amarillo, Tex., in June, 1911, and worked four days, being discharged on account of reduction in force. He did not get a service letter. He then re-entered the service of the defendant company at Denison in September, 1911, but the duration of his employment is not stated. He did no railroading in 1912. His next employment

was with the S. A. & A. P., in the first part of 1913, at Yoakum, Texas., where he worked for about six weeks during the stock rush. and was cut off on account of reduction in force. He received from this company a service letter, but lost it. He then went to work with the Burlington at La Crosse, Wis., in July, 1913, and was cut off, he says, account of his application. He next secured employment with the G. H. & H. in Texas in August, 1913, for three weeks and lost out on account of his application. In October, 1913, he went with the S. P. at Los Angeles, Cal., for about ten days, and lost his place, as he stated, on account of his application. He then hired with the W. P. at Orrsville, Cal., but did not get to work because they fired him, as he states, before he got out. He then went to Sacramento and attempted to make application under an assumed name, using another railroad man's name and his references, and representing that they were his references, but he says he could not get by with them. That was October, 1913. He then went to Pocatello, Idaho, with the Oregon Short Line on November 24, 1913. Under date of December 3, 1913, the defendant wrote the Oregon Short Line Ry. Co., in response to a request from the plaintiff as to his personal character, habits, and ability, and the cause of his leaving the employment of the defendant company. Upon receipt of this letter the plaintiff was discharged by the Oregon Short Line Ry. Co.

There is no evidence in the record showing that the plaintiff after his last discharge sought employment with any other railroad company, or that he was at any time refused employment by reason of the report furnished by the defendant company. Immediately upon his discharge he went to Muskogee, Okla., for the purpose of having his record cleared, but failed to receive any satisfaction at that time. However, the employes of the defendant in the office of its superintendent at Muskogee, after diligent search, discovered that the letter of December 3, 1913, addressed to the Oregon Short Line Co., did not cover the cause of the plaintiff's finally leaving the defendant's service. They thereupon at once wrote a letter to the superintendent of the Oregon Short Line Co., under date of March 30, 1914, containing a statement of the cause of plaintiff's finally leaving the service, to wit, that he resigned July 14, 1910. There is no charge in plaintiff's petition, nor was there any evidence, that he was damaged because of negligence or failure of the defendant to have its records complete. The sole and only ground of complaint is that plaintiff has been damaged in the sum of $20,000 because the de-

fendant company had uttered and published of and concerning plaintiff a willful, wicked, false, and malicious libel, whereby plaintiff's standing and character as a railroad workman had been ruined, and that it was impossible for plaintff to procure employment from any other railroad company.

This cause was tried in the court below on the theory that the letter of the 3rd of December was a qualifiedly privileged communication. The instructions given by the court fully cover the law on this theory. The jury was instructed without objection on this point that the letter of December 3rd, issued by the defendant, was such a communication for the publication of which the plaintiff was not entitled to recover damages unless the jury should find from the evidence that said letter was written and published intentionally and with knowledge that it was untrue and with the intention of injuring the plaintiff; that the burden of proof was upon the plaintiff to show by a preponderance of the evidence that the letter was written with malicious intent and for the purpose of injuring plaintiff; that the letter does not imply malice from the wording of a communication which is privileged; that if a communication is privileged, actual malice must be proved by the plaintiff before there can be any recovery, and if they found from the evidence that the letter was written and published by the defendant's employes honestly and in good faith and without intention on their part to injure the plaintiff, the mere fact that the records from which the false information was taken were carelessly and negligently kept by others of the employes would not justify recovery by the plaintiff; that if they failed to find from a preponderance of the evidence that the letter was written and published by the defendant or its agents or employes with a malicious intent, the verdict should be for the defendant.

It has been suggested that section 4958, Rev. Laws 1910, defines what is a privileged publication or communication, and that no publication can be privileged or qualifiedly privileged unless the same is within the purview of this section. However, in disposing of this cause, it is not necessary to construe the statute just quoted. The last clause of paragraph 3 of the section provides:

"In all cases of publication of matter not privileged under this section, malice shall be presumed from the publication, unless the fact and the testimony rebut the same. No publication which, under this section would be privileged, shall be punishable as libel."

In German American Insurance Co. v. Huntley et al., 62 Oklahoma, 161 Pac. 815,

the 4th and 5th paragraphs of the syllabus are as follows:

"In an action for libel, where plaintiff has established that defamatory matter has been published by the defendant concerning him, he is entitled to recover, unless the 'fact' (the publication itself) and the testimony rebut the presumption of malice. The burden of adducing evidence to rebut such presumption is upon the defendant."

"If the fact and the testimony rebut the presumption of malice, the burden then rests upon the plaintiff to show express malice in order to recover."

The rule seems to be well established that when facts adduced in evidence are uncontroverted, it becomes the duty of the court to determine whether or not there is any testimony adduced upon the trial which tends to prove malice. If from the uncontroverted testimony there is no malice shown, then there exists no cause of action, and it becomes the duty of the court to direct a verdict for the defendant.

We have examined carefully all the evidence in the case, and fail to find any evidence to justify the inference of malice on the part of the defendant towards the plaintiff in writing the letter complained of. The records in possession of the defendant disclose that the plaintiff had been discharged for violating rule "G". In another portion of the record, it appeared the plaintiff had been reinstated. The clerk of the defendant company who furnished the letter complained of failed to examine the whole record. The fact that he was negligent in failing to state that the plaintiff had been re-instated and had resigned, does not within itself establish that he was actuated by malice or ill will towards the plaintiff. He was not acquainted with the plaintiff,—had never seen him. There is no evidence that the clerk at the time of the issuance of the letter knew that the statement therein contained was false. When the plaintiff resigned his position with the defendant in 1910, he received from the defendant a service letter showing his record to be clear. This letter plaintiff says was either lost or worn out at the time he made application for work with the Oregon Short Line. The issuance of this letter by the defendant negatives the existence of any malice or ill will at that time on the part of the defendant. The court, over the objection of the defendant, instructed the jury that if their verdict was for the plaintiff, it would be their duty to allow him such damages as would reasonably and fairly compensate him for such detriment and damages as they found from a preponderance of the evidence he had suffered as the proximate result of such publication and that they could allow him as exemplary damages such other and further sum as in their judgment, as just and reasonable men, would be a just and reasonable punishment of the defendant for its wrong. To authorize a recovery for exemplary damages in an action sounding in tort, the evidence must show some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence as is deemed equivalent to such intent. See Williams v. Baldrey, 52 Okla. 126, 152 Pac. 814; Western Union Telegraph Co. v. Cates, 65 Oklahoma, 164 Pac. 779. In this connection, the defendant, by its requested instruction No. 21, asked the court to instruct the jury that if plaintiff was entitled to any special damages by reason of the failure to secure employment and he lost employment as a result of the letter complained of, his damages should be confined to the loss of employment from the time of his discharge by the Oregon Short Line in December, 1913. Plaintiff in his brief answers this contention by saying that he never asked any damages for the latter cause —that he only offered evidence of these other instances to show that he had been diligent in trying to get employment.

We find from the record that the sole and only ground of complaint on the part of the plaintiff is for damages and injury suffered by the plaintiff by reason of the malicious, willful, and intentional erroneous information given by the defendant to the Short Line Co. No special damages have been alleged, and none have been proved. The rule appears to be well settled that special damages must be pleaded, and it is error to admit proof of such damages in the absence of such allegation. Boyden v. Burke, 14 How. 576, 14 L. Ed. 548; Gumb v. Ry. Co., 114 N. Y. (69 Sickles) 411; Tomlinson v. Town of Derby. 43 Conn. 562.

Where there is no evidence reasonably tending to establish a material issue submitted to the jury under the instructions of the court, which the jury must have found in favor of the prevailing party in order to have returned the verdict, the verdict will be set aside. Phelan v. Barnhart Bros. & Spindler. 75 Oklahoma, 181 Pac. 718. In American National Bank v. Stapleton, 67 Oklahoma, 169 Pac. 494, the syllabus is as follows:

"Where there is any evidence reasonably tending to support the verdict of the jury, it should not be disturbed by the Supreme Court; but where, after a careful examination of all the evidence in the case, it is found that there is not any competent evidence to

that Mrs. Lowe notified McCartney that she sustain the verdict, the cause will be reversed."

As the evidence fails to show malice on the part of the defendant, we are of the opinion that the demurrer to the evidence was well taken and should have been sustained, and that in overruling the demurrer the court committed prejudicial error. The judgment of the trial court is, therefore, reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

OWEN, C. J., and McNEILL. HIGGINS, and BAILEY, JJ., concur.