## OKLAHOMA PUBLISHING CO. v. GRAY.

No. 12186. Opinion Filed Sept. 10, 1929.

Embry, Johnson & Tolbert, for plaintiff in error.

Warren K. Snyder, for defendant in error.

ANDREWS, J. The defendant in error was the plaintiff and the plaintiff in error was the defendant in the trial court, and they will be referred to herein as they appeared in the trial court.

The defendant published in the Daily Oklahoman, a daily newspaper owned and published by the defendant, a certain statement, as follows:

"Lawyer Arrested on Fraud Charge.

"Lee M. Gray, Counsel for Green, Faces Federal Trial.

"Lee M. Gray, Attorney, of Hennessey, was arrested Wednesday night by a deputy United States marshal on an indictment issued by the federal grand jury in session at Guthrie last week charging him with using the mails to defraud. He was taken before United States Commissioner Ernest G. Chambers and released for appearance in court here under a, bond of $5,000.

"Gray is charged with the same violations of the federal law for which Ellsworth J. Green and his son, E. H. Green, are held for trial. It is alleged that he conspired with the Greens in promoting five oil stock selling companies controlled by the Great Western Guarantee Investment Company that offered and sold stock under a guarantee that, subscribers would double their money by a certain date. The contracts given all subscribers, it is said, contained the 'resale clause' which caused the indictment of the Greens"

—which was distributed in Kingfisher county and in the cities of Kingfisher and Hennessey.

Plaintiff contends that this statement was false and defamatory and that the defendant "* * * willfully, maliciously, wickedly, intending to deprive the plaintiff of public confidence and to injure him in his profession and business and to expose him to public hatred, contempt, ridicule, scorn and obloquy, did, on or about the 2nd day of August, 1918, maliciously, publish and circulate in Kingfisher county and in the town of Hennessey and in the city of Kingfisher * * *", the said article.

The plaintiff filed his petition in the district court of Kingfisher county against the defendant, in which he alleged, among other allegations, in substance, the following: That plaintiff for 25 years had been a successful lawyer, living and practicing law in the city of Kingfisher and the town of Hennessey; that the defendant was a corporation and the publisher of the Daily Oklahoman; that plaintiff and others, including the Greens named in said article, were jointly indicted, as stated by plaintiff, "* * * to put it briefly, with selling worthless stock to the public generally; that they devised a scheme to sell worthless stock to the public generally, and in furtherance of that scheme they used the mail service of the United States;" a copy of the indictment being set out therein; that at the trial of the plaintiff and his codefendants on the indictment, the attorney for the plaintiff made a statement to the jury, which was set out in the petition, and which consisted of an extensive statement of what the plaintiff's attorney said the evidence would show on behalf of the plaintiff and included hearsay statements, statements that were incompetent, irrelevant, and immaterial to the issues herein and statements which were purely self-serving, including what the attorney himself had done and conversations which the attorney had had with other people in the absence of the defendant herein or its officers and agents; that it took about a month to try the case of the indictment and for 16 days the plaintiff had to sit there listening to the unfolding of the cause against Green and that at the conclusion of the evidence the demurrer of the plaintiff thereto was sustained; that a receiver was appointed for the oil companies thereafter named in the indictment and the receiver brought a suit against the plaintiff and others and upon a trial thereof plaintiff testified that he was not connected with the Greens as counsel or otherwise and that case was dismissed as to him, all of which was a matter of record in the district court of Oklahoma county, and the defendant knew or could, with reasonable diligence, have ascertained that the plaintiff was not counsel for the Greens.

"That when said defendant published said article in said issue of said newspaper it meant to say and did say that this plaintiff was counsel for said Greens and acting as their attorney and counsel for the purpose of using the United States mails in furtherance of a fraudulent and criminal conspiracy to sell worthless stock in oil companies to certain persons named in the indictment and to the public generally; that the said defamatory matter so published and circulated by said defendant in said Kingfisher county, Okla., of and concerning this

plaintiff and of and concerning his business and profession was false and untrue and known to said defendant to be false and untrue at the time said defendant so published and circulated the same; and was so published and circulated in Kingsfisher county by said defendant with the intent to destroy the good name and reputation and business of the plaintiff and to cause him pecuniary loss in his profession and business.

"That said false and defamatory matter so published and circulated in Kingfisher county and throughout the state of Oklahoma by said defendant of and concerning said plaintiff and of and concerning said plaintiff in reference to his profession and business, exposed said plaintiff to public hatred, contempt, ridicule, scorn, and obloquy and with the intent to deprive him of public confidence and injure him in his profession and business, and by reason of the publication and circulation aforesaid in Kingfisher county, state of Oklahoma, of said matter by defendant, said plaintiff has been damaged in the sum of $30,000.

"That said defendant designedly, wilfully, wantonly, wickedly and premeditatedly without regard to human rights or without regard to human feelings and in order that more people in Kingfisher county and throughout the state of Oklahoma should be attracted to and read said articles, the caption to said article was printed in large letters and under conspicuous headlines, the said defendant knowing the said headlines to be false and defamatory; thereby trying to assassinate the character and reputation of the plaintiff and receiving the benefit of extending the circulation over said county and state by reason of said sensational article which was printed maliciously."

The defendant filed its answer in which it alleged as a defense that the published matter was true except as to "counsel for Green"; that the statement was privileged, and that it was made in good faith and with no intention to injure. Plaintiff filed a general denial as a reply.

Defendant thereafter filed a motion for continuance. which was overruled by the court. and defendant was thereupon granted permission to file an amendment to its answer as of the day of the original filing of the original answer and the answer was amended to deny the innuendo contained in the petition and to admit an error in the name of the United States commissioner before whom the plaintiff had been taken.

The cause was tried to a jury on the issues thus made.

The evidence shows that the plaintiff, a lawyer, lived at Hennessey and that he had practiced law in Kingfisher county for some 25 years; that he was indicted in the federal court, as alleged in the petition, and taken before United States Commissioner Zinzer, at Enid, where he was released on bond; that he never knew either of the Greens and that he had never had any business relation with them or either of them and that he had never, at any time, acted as attorney for either of them; that he was counsel and advised Carl Cunningham with reference to the collection of a draft given for some salt leases sold by Carl Cunningham's father; that he was sued in the district court. of Oklahoma county along with others in an action to enjoin him with reference to some of the property involved in the matters charged in the indictment; that after trial thereof he was discharged by the trial court; that upon the trial of the indictment his demurrer to the evidence of the government was sustained; that someone told him that "These people that were intending to employ you to commence an action to cancel these oil leases that they had given on their land and the leases were not paid, that is, the rentals were not paid,—learned that you were counsel for the Greens and you will not be able to get any of that business, since they have defrauded some of those people in that neighborhood and they were astonished to know that you were counsel for the Greens, who had done that," which testimony was admitted over the objection of the defendant, and the motion of the defendant to strike the same was overruled.

There is nothing in the record of the testimony to show that the article complained of was intended to or had the meaning attributed to it by the plaintiff. There were no extrinsic facts which tended to show that the article was libelous.

At the conclusion of the trial the court instructed the jury that the article was libelous per se, and malice presumed thereby, and the jury returned a verdict in favor of plaintiff in the sum of $10,000.

Among the many assignments of error we think it necessary to consider only two, the first of which is, Is the article libelous per se?

There is no fixed rule by which the court can determine whether or not a statement is libelous per se, and the statement must be examined before it can be determined whether or not it is libelous per se.

"In considering cases of this kind and character. the different courts have referred to articles as being 'libelous,' and

those that are 'libelous per se.' No writer has attempted to lay down any strict rule of law, which may be followed by the courts in distinguishing between publications that are 'libelous' and those termed 'libelous per se.' We have been unable to find any writer who has defined the term 'libelous per se,' but our court has often referred to publications as being 'libelous' and those 'libelous per se.'" Kee v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494.

The rule by which the statement should be examined in order to determine whether or not it is libelous per se was stated by this court in Kee v. Armstrong, Byrd & Co., supra, and it was there held:

"Words charging one with being engaged in a perfectly lawful transaction, or merely doing that which he has a legal right to do, are not actionable per se."

Thereafter in the case of Dusabek v. Martz, 121 Okla. 241, 249 Pac. 145, in an opinion by Mr. Justice Riley, the rule announced in Kee v. Armstrong, Byrd & Co., supra, just quoted, was overruled and a new and more limited rule was stated as follows:

"The true rule is that where the publication charges the plaintiff with nothing that he might not have legally and properly done, the same cannot be held to be libelous per se."

We must then determine whether or not the plaintiff was charged with anything that he might not have legally and properly done. If he was not so charged, then the article is not libelous per se.

Words used in an alleged libelous article are to be construed by the most natural and obvious meaning, and in the sense that would be understood by those to whom they were addressed. Kee v. Armstrong, Byrd & Co., supra, Phoenix Printing Co. v. Robertson, supra, and Oklahoma Publishing Co. v. Kendall, 96 Okla. 194, 221 Pac. 762.

An examination of the article discloses that the plaintiff was charged therein as follows:

(1) That he is a "lawyer."

(2) That he was "arrested on a fraud charge."

(3) That he is "counsel for Green."

(4) That he "faces federal trial."

(5) That he "was arrested Wednesday night by a deputy United States marshal on an indictment issued by the federal grand jury in session at Guthrie last week charging him with using the mails to defraud."

(6) That "He was taken before United States Commissioner Ernest G. Chambers and released for appearance in court here under a bond of $5,000."

(7) That he "is charged with the same violations of the federal law for which Ellsworth J. Green and his son, E. H. Green, are held for trial."

(8) That "it is alleged that he conspired with the Greens in promoting five oil stock selling companies controlled by the Great Western Guarantee Investment Company that offered and sold stock under a guarantee that subscribers would double their money by a certain date."

(9) That "The contracts given all subscribers, it is said, contained the 'resale clause' which caused the indictment of the Greens."

The plaintiff testified:

"Q. So, the only errors in this article are the name of this commissioner and the fact that the words 'counsel for Green' appeared after your name, isn't that true? A. Yes, sir; it is. That is true.

"Q. That is all you are complaining about, is it not? A. Yes sir; it is.

"Q. As a matter of fact, you thought that they should not have used the words 'counsel for Green' there? That was really the error that you complained of, was it not? A. Yes, sir; it is.

"Q. You are not complaining of any of the other matters, appearing in the article, plaintiff's Exhibit '5,' are you? A. May be I don't understand you.

"Q. The question is withdrawn. You are not claiming that any of the statements are incorrect, except the words 'counsel for Green' and the name of Chambers as the United States commissioner? A. I think the rest is correct."

It is admitted that the plaintiff had been taken before United States Commissioner Zinzer at Enid rather than before United States Commissioner Chambers at Oklahoma City. The error is immaterial and was so held by the trial court.

The record sustains the testimony of the plaintiff and shows that the only material false statement in the article complained of is "counsel for Green."

Examined under the rule announced by this court, we find that this article charged the plaintiff with nothing that he might not have legally and properly done.

It was not illegal nor improper for the plaintiff to be "counsel for Green."

Had Green been Oklahoma's most notorious law violator, it would be neither ille-

gal nor improper for plaintiff to be his counsel, and as a member of the Bar of the State of Oklahoma the plaintiff took an oath which requires him to represent any defendant when directed by the court so to do.

The plaintiff in the preparation of the petition recognized this to be true. Apparently he did not consider the article libelous per se, for he pleaded:

"That when said defendant published said article in said issue of said newspaper it meant to say and did say that this plaintiff was counsel for said Greens and acting as their attorney and counsel for the purpose of using the United States mails in furtherance of a fraudulent and criminal conspiracy to sell worthless stock in oil companies to certain persons named in the indictment and to the public generally. * * *"

He now contends that this was mere surplusage. We do not think so.

While it is not illegal nor improper for an attorney to appear as a counsel for a notorious law violator, it is illegal and improper for an attorney to counsel with any person for the purpose of using United States mail for the furtherance of a fraudulent and criminal conspiracy, and plaintiff attempted, in his petition, to show that the language "counsel for Green" was, when aided by extrinsic facts, a charge of illegal and improper conduct on the part of plaintiff.

The article, read alone without explanation, charged the plaintiff with nothing illegal or improper.

The allegation of illegal and improper conduct on the part of the plaintiff was in the indictment. This article is an admittedly correct statement of what the indictment charged.

Kee v. Armstrong, Byrd & Co., supra, and Dusabek v. Martz, supra, cite all the authority which we think necessary to be cited herein, and we hold that the article complained of was not libelous per se and that the trial court committed reversible error in so instructing the jury.

The next question that presents itself is, Does the petition contain sufficient allegations of libel? In Kee v. Armstrong, Byrd & Co., supra, it is said:

"It has been well said that words charged to be libelous fall into one of three classes: 'First, those that cannot possibly bear a defamatory meaning; second, those that are reasonably susceptible of a defamatory meaning, as well as an innocent one; third, those that are clearly defamatory on their face.'

Pratt v. Pioneer Press Co., 30 Minn. 41, 14 N. W. 62."

We think the article complained of is clearly within the second class referred to, of which the court in that case said:

"The second class are those words that are reasonably susceptible of a defamatory meaning, as well as an innocent one, and may be made defamatory by reason of their ambiguity, or by pleading certain extrinsic facts, connecting said facts with the publication, and by pleading that the article was meant and understood by the general public to have such a meaning and that the general public so construed the publication."

This article may be shown to be defamatory by the reading into it of certain extrinsic facts connecting said facts with the publication and by the pleading that the article was meant and understood to have such a meaning and that the general public so construed the publication.

This was evidently what the plaintiff intended to do. The question before us now is, Did he do so? We again refer to Kee v. Armstrong, Byrd & Co., supra, where the rule laid down in 13 Cyclopedia Pleading and Practice, page 32, is quoted with approval as follows:

"If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. Words not actionable per se may be made to appear actionable by averring such extrinsic facts as will show that they were intended to be slanderous and were so understood. These averments must be distinctly stated in the inducement and applied to the plaintiff by a proper colloquium, with the intended and understood meaning correctly set out in the innuendoes."

An examination of the petition discloses that no extrinsic facts and circumstances are set forth which tend to show that the article was libelous, or that the petition conforms to the rule just quoted.

We do not think it necessary to discuss this publication at length, and it is sufficient to say that there is an extended discussion of the subject contained in that decision which is applicable to the petition in this case.

To the same effect is the rule announced in Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 Pac. 487.

There is another rule applicable to the petition in this case which is stated in Mc-

Kenney v. Carpenter, 42 Okla. 410, 141 Pac. 779, as follows:

"It is not every written charge against an individual that will sustain a suit for damages, and, where the article itself is not libelous per se, there must be an allegation of special damages, before a recovery can be had. The plaintiff has not attempted to support this action by any allegation of a special damage, but relies solely upon an allegation of general damages. It is apparent, from an examination of the petition, that there is a total failure to show that the plaintiff has suffered special damages following as the necessary, natural, and proximate consequence of the publication complained of. It is insufficient to allege generally that the plaintiff 'was and is greatly and permanently injured and damaged in his good name and reputation and was and is exposed to public contempt, hatred, and ridicule and has been caused to resign his position with the said city of Ardmore and has been damaged in his business and reputation in the amount of $10,000,' without showing by proper averment how the special damages were occasioned. Sherman Machine Co. v. Dun, 28 Okla. 447, 114 Pac. 617; Geisler v. Brown, 6 Neb. 254; Reporters' Association of America v. Sun Printing & Pub. Ass'n, 186 N. Y. 437, 79 N. E. 710; Woodruff v. Bradstreet Co., 116 N. Y. 217, 22 N. E. 354. 5 L. R. A. 555; Betsy Cook v. Miranda Cook. 100 Mass. 194; Stewart v. Minnesota Tribune Co., 40 Minn. 101, 41 N. W. 457, 12 Am. St. Rep. 696; Newell on Slander & Libel, sec. 49, et seq."

To the same effect are Thomas v. McShan, 99 Okla. 88, 225 Pac. 713. and Wiley v. Oklahoma Press Publishing Co., 106 Okla. 52, 233 Pac. 224. This rule is stated in Hargrove v. Oklahoma Press Publishing Co., 130 Okla. 76, 265 Pac. 635, as follows:

"No special damages are alleged. Therefore, if said publication is not libelous per se, the action of the trial court in sustaining the demurrer to the plaintiff's petition was proper. Matthews v. Oklahoma Publishing Company, 103 Okla. 40, 219 Pac. 947; M. K. & T. Ry. Co. v. Watkins, 77 Okla. 270. 188 Pac. 99; Kee v. Armstrong, Byrd Co., 75 Okla. 84, 182 Pac. 494."

When the petition in this case is examined under this rule, it clearly appears that even though the statement is libelous, but not libelous per se, no cause of action is stated by reason of the failure to allege special damages.

Plaintiff cites the following cases, to wit: Cobb v. Oklahoma Publishing Co. 42 Okla. 314, 140 Pac. 1079; Oklahoma Publishing Co. v. Kendall. supra; Nunnery v. Bailey, 65 Okla. 260, 166 Pac. 82: German American

Ins. Co. v. Huntley, 62 Okla. 39, 161 Pac. 815; Kee v. Armstrong, Byrd Co., supra; Kelly v. Roetzel, 64 Okla. 36, 165 Pac. 1150; McKenney v. Carpenter, 42 Okla. 410, 141 Pac. 779, and Phoenix Printing Co. v. Robertson, supra, in support of his contention. Under the view we take as to the rules applicable to this case, those decisions are not in his favor.

Plaintiff also cites cases holding that where publication is libelous per se malice is presumed, all of which is admitted.

Plaintiff says:

"It seems to us that this case is almost a dead ringer for the case of Bodine v. Times Journal Publishing Co., reported in 26 Okla. 135, 110 Pac. 1096, decided in 1910."

An examination of that case discloses an entirely different state of facts from that disclosed by the record in this case. There the statement was made that Bodine did certain things. Here there is no statement that the plaintiff did anything. The statement is that the plaintiff was indicted. There the statements of what Bodine did were false. Here the statement that plaintiff was indicted was true. There the court held that the report was not fair and true. Here it is clear that the report was fair and true, the only thing untrue being that plaintiff was not "counsel for Green." In that case there was libel per se. There is no libel per se in this case. We do not consider that case in any way in point.

Plaintiff relies on Spencer v. Minnick, 41 Okla. 613, 139 Pac. 130. There the publication was a clear and unequivocal charge of malfeasance in office which the court said was clear to all men, an entirely different charge from that shown by the record in this case.

Plaintiff also cites Vorhees v. Toney, 32 Okla. 570, 122 Pac. 552. There the plaintiff is charged with theft and robbery. That in itself is sufficient to show that that case is no authority here.

We do not think it necessary to refer to all the cases cited in the briefs of the plaintiff. An examination of each of them and an examination of every libel case decided by this court discloses that there are none of them in conflict with the rules expressed in the syllabus in this case.

Plaintiff in one brief states:

"Now, of course, all of us are agreed that if this is not libelous per se, to be actionable innuendo would have to be used and special damages would have to be alleged,

but if it is actionable per se, innuendo or colloquium is not necessary, and if it is used in a case where the publication is libelous per se, such innuendo is treated under all the authorities as surplusage"

—which is an admission of one of the rules announced.

In the same brief he says:

"John Embry, you and your associates take notice of this and remember what our own court has said on this question—that no text-writer has ever laid down any hard and fast rule by which it may be determined whether an article is libelous or libelous per se, but that the courts—our own courts in this great state—have frequently determined what is libelous per se and what is not"

—which is an admission of another rule announced.

It is clear to this court that the published article is not libelous per se. There being no allegation of special damage, the petition does not state a cause of action for libel.

The petition was not aided by the evidence. An examination of the testimony shows nothing to aid the petition.

The trial court was in error in overruling the demurrer of the defendant to the petition and in overruling the demurrer of the defendant to the evidence of the plaintiff and in refusing to instruct the jury, as requested by the defendant, to return a verdict for the defendant.

The cause is reversed and remanded to the district court, with instructions to set aside the verdict and judgment and sustain a demurrer to the petition of plaintiff.

MASON, C. J., LESTER, V. C. J., and HUNT, CLARK, RILEY, and HEFNER, JJ., concur. SWINDALL, J., absent, and CULLISON, J., disqualified.