## FITE v. OKLAHOMA PUBLISHING CO.

No. 16852. Opinion Filed Dec. 9, 1930.

T. G. Chambers, Jr., and Claude Nowlin, for plaintiff in error.

Rainey, Flynn, Green & Anderson and Calvin Jones, for defendant in error.

ANDREWS, J. The plaintiff in error commenced this proceeding in the district court of Oklahoma county to recover from the defendant in error general and exemplary damages for the injury alleged to have been sustained by her through the publication in the Oklahoma City Times and the Daily Oklahoman, two newspapers published and distributed by it, of an article, as follows:

"Fight Started for Removal of Mrs. Fite.

"That the political fortunes of Mrs. R. L. Fite of Tahlequah, vice chairman of the Democratic Central Committee, will go down with those of Governor Walton, was the opinion of legislators opposed to Walton who have started a fight to remove Mrs. Fite from her position with the committee for the part she played in the Walton administration.

"The fight will be made on the grounds that the vice chairman should be impartial between candidates during a primary campaign. Mrs. Fite was one of 'the original' Walton supporters and has been on the state pay roll since the inauguration of the Governor.

"Her first position was under the 'extraordinary protection of the state fund,' as 'counselor of the woman of the state.' She later was transferred to the Health Department pay roll and is now on the Highway Department pay roll. Both of these departments are under Walton appointees. It is not clear just what her duties have been.

"It is alleged that Mrs. Fite has attempted to 'lobby' with certain Senators in an effort to prevent the possible removal of Walton from office."

The parties will be hereinafter referred to as plaintiff and defendant.

At the conclusion of the evidence of the plaintiff the defendant demurred thereto on the ground that the same was insufficient to constitute a cause of action in favor of the plaintiff and against the defendant. That demurrer was sustained and judgment was rendered in favor of the defendant dismissing the plaintiff's action at her cost. From that order and judgment, the cause was appealed to this court.

There are certain rules, heretofore announced by this court, which we consider to be applicable in the determination of the issue presented here and to which we will

refer before we discuss the evidence of the plaintiff.

There is no fixed rule by which the court can determine whether or not a statement is libelous per se, and the statement alleged to be defamatory must be examined before it can be determined whether or not it is libelous per se. Kee v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494; Oklahoma Publishing Co. v. Gray, 138 Okla. 71, 280 Pac. 419.

The true rule is that where the publication alleged to be defamatory charges the plaintiff with nothing that he might not have legally and properly done, the same cannot be held to be libelous per se. Dusabek v. Martz, 121 Okla. 241, 249 Pac. 145; Oklahoma Publishing Co. v. Gray, supra.

It is contended by the plaintiff that there is no distinction in this state between articles libelous per se and articles that are not libelous per se, sometimes referred to as libelous per quod. We do not agree with that contention. The cases hereinbefore cited show that that distinction has long been recognized by this court. It was recognized in N. S. Sherman Machine Co. v. Dunn, 28 Okla. 447, 114 Pac. 617, and was again followed in Hargrove v. Oklahoma Press Publishing Co., 130 Okla. 76, 265 Pac. 635. It was therein stated to be as follows:

"No special damages are alleged. Therefore, if said publication is not libelous per se, the action of the trial court in sustaining the demurrer to the plaintiff's petition was proper. Matthews v. Oklahoma Publishing Company, 103 Okla. 40, 219 Pac. 947; M., K. & T. Ry. Co. v. Watkins, 77 Okla. 270, 188 Pac. 99; Kee v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494."

In that case this court said:

"Does the published article contain libel actionable per se? The term 'per se' means 'by itself; simply as such; in its own nature without reference to its relations' (Standard Dictionary) ; and, in connection with slander and libel, the term is applied to words which are actionable because they, of themselves, without anything more, are opprobrious. In other words, a publication is actionable per se when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff and not to some other person. Kee v. Armstrong, Byrd & Co., supra; Rowan v. Gazette Printing Co. (Mont.) 239 Pac. 1035."

Words used in an article alleged to be defamatory are to be construed by the most natural and obvious meaning, and in the sense that would be understood by those to whom they were addressed. Kee v. Armstrong, Byrd & Co., supra; Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 Pac. 487; Oklahoma Publishing Co. v. Kendall, 96 Okla. 194, 221 Pac. 762.

The article complained of consists of a printed statement. It is therein said that the plaintiff is the vice chairman of the Democratic Central Committee; that legislators were of the opinion that her political fortunes will go down with those of Governor Walton; that legislators opposed to Walton have started a fight to, remove her from her position with the committee; that the reason therefor is the part she played in the Walton administration; that the fight will be made on the grounds that the vice chairman should be impartial between candidates during a primary campaign; that she was one of the original Walton supporters; that she has been on the state pay roll since the inauguration of the Governor; that her first position was under the "extraordinary protection of the state fund"; that she was transferred to the Health Department; that she is now on the Highway Department pay roll; that both of those departments are under Walton appointees; that it is not clear just what her duties have been and that she has attempted to "lobby" with certain Senators in an effort to prevent the possible removal of Walton from office.

The evidence offered by the plaintiff shows that the plaintiff was, at the time of the trial in April, 1925, a married lady of Cherokee Indian blood. She resided with her husband and family at Tahlequah, where she had resided for more than 60 years, she being at the time 62 years of age. In addition to caring for her domestic affairs and raising her family, she had been active in public affairs and in the welfare of the people. She had taken an active interest in local conditions, and from reading and studying at home and in the educational institution which she attended, she had become interested in women suffrage, the Red Cross, the Democratic party and many other public causes. She was serving as vice chairman of the Democratic Central Committee at the time of the publication and had served as such for about four years. She had traveled extensively throughout the state, was well and favorably known in every county in the state and nothing had ever been said about her in any way to detract from her reputation as an honest, conscientious, public spirited, Christian citizen. Her reputation was such as to cause a demand for

her as a public speaker, not only during political campaigns, but in other matters of public interest.

The record further shows that the statements made in the published article were false at least to the following extent: That she had never been employed by the state or held any official position under the state, had never been appointed by the Governor or anybody else to any official state position, and had never received any money from the state for any services to or for the state.

The record further shows that she never at any time attempted to influence by lobbying, or otherwise, the vote of the Senators of the state with reference to whether or not Governor Walton should be impeached.

The question then arises whether or not the false statements contained in the article, when construed by the most natural and obvious meaning and in the sense that they would be understood by those to whom they were addressed, charged her with anything that she might not have legally and properly done.

Since the rules of the Democratic State Central Committee are not before this court in the record, this court is unable to say, as a matter of law, that it was improper for the vice chairman of the Democratic State Central Committee not to be impartial between candidates during a primary campaign. There is no law making it illegal.

The statement that legislators opposed to Walton have started a fight to remove plaintiff from her position with the State Democratic Committee is not libelous per se, and the statement that their reason for starting such a fight was the part she played in the Walton administration does not make it so.

The statement that legislators were of the opinion that the political fortunes of the plaintiff will go down with those of Governor Walton could not be libelous per se.

It is not libelous per se to charge that a person has been on the state pay roll since the inauguration of a Governor, and the fact that that statement is coupled with a statement of the title to the position or positions alleged to have been held under the state does not make it libelous per se.

The fact that plaintiff was stated to have held a position under the "extraordinary protection of the state fund" is not a charge against her of having done anything that she could not legally and properly have done. She could have legally and properly held such a position. That her duties in such position were said to be "counselor to the women of the state" was not a charge of anything illegal or improper on her part. If she was assigned to such a position and duties, she could legally and properly accept the position and perform the duties. It is said that there was no authority for such a position and that no such position had been created, and that therefore there was no authority for the payment to her of state funds. That statement is necessary to make the article defamatory. It does not appear in the article. The fact that that statement is necessary to make the article defamatory shows that the article as printed is not libelous per se.

A statement that is "not clear just what her duties have been" is not libelous per se. A statement that her duties are not clear cannot be a charge of anything illegal or improper. The duties of many employees of the state are not clear.

That leaves for consideration on this issue only one question, that is, whether or not it is libelous per se to charge plaintiff with attempting to lobby with certain Senators in an effort to prevent the possible removal of Walton from office. The article does not charge that she attempted to lobby with certain Senators in violation of the law. Section 3, art. 2, of our Constitution provides:

"The people have the right peaceably to assemble for their own good, and to apply to those invested with the powers of government for redress of grievances by petition, address, or remonstrance."

Our statutes specifically authorize lobbying. (Article 6, ch. 6, C. O. S. 1921.) They not only provide that it may be lawfully done, but they provide for the issuance of a written permit so to do. The article does not charge that she attempted to lobby in violation of that express authority. Many good citizens are lobbyists and are employed for that particular purpose. The charge that an individual has attempted to lobby with Senators is not a charge that he has attempted to do anything illegal or improper. When given the most natural and obvious meaning, the language used would be understood by the public to which it was addressed to mean that she was trying to influence certain Senators not to remove from office a Governor elected to that position by the voters of this state. It cannot be said that the article charges that she attempted to do so in an unlawful or improper manner, and every right-thinking person would construe the statement to mean that as a citi-

zen of the state she was attempting in a legal and proper manner to prevent the removal of the Governor of the state from office.

It is said that it would be improper for any person to attempt to lobby with a Senator acting as a member of a court of impeachment as to questions pending before that court. We agree with that contention, but it has no bearing on the issue here, for this article does not charge the plaintiff with having attempted to lobby with a member of a court of impeachment. There is no allegation in the article that there was a court of impeachment in existence at that time. In fact the Senate did not convene as a court of impeachment until October 24, 1923, three days after the publication of the article complained of.

Since the language used in the article charged the plaintiff with nothing illegal or improper, the article falls within the second class of articles defined in Kee v. Armstrong, Byrd & Co., supra, as follows:

"The second class are those words that are reasonably susceptible of a defamatory meaning, as well as an innocent one, and may be made defamatory by reason of their ambiguity, or by pleading certain extrinsic facts, connecting said facts with the publication, and by pleading that the article was meant and understood by the general public to have such a meaning and that the general public so construed the publication."

This was evidently what the plaintiff intended to do in preparing the amended petition and in using the language used therein.

The rule applicable in this case is stated in McKenney v. Carpenter, 42 Okla. 410, 141 Pac. 779, as follows:

"It is not every written charge against an 'individual that will sustain a suit for damages, and, where the article itself is not libelous per se, there must be an allegation of special damages, before a recovery can be had. The plaintiff has not attempted to support this action by any allegation of a special damage, but relies solely upon an allegation of general damages. It is apparent, from an examination of the petition, that there is a total failure to show that the plaintiff has suffered special damages following as the necessary, natural, and proximate consequence of the publication complained of. It is insufficient to allege generally that the plaintiff 'was and is greatly and permanently injured and damaged in his good name and reputation and was and is exposed to public contempt, hatred, and ridicule and has been caused to resign his position with the said city of Ardmore and has been damaged in his business and reputation in the amount of $10,-000,' without showing by proper averment how the special damages were occasioned. Sherman Machine Co. v. Dun, 28 Okla. 447, 114 Pac. 617; Geisler v. Brown, 6 Neb. 254; Reporters' Association of America v. Sun Printing & Pub. Ass'n, 186 N. Y. 437, 79 N. E. 710; Woodruff v. Bradstreet Co., 116 N. Y. 217, 22 N. E. 354, 5 L. R. A. 555; Betsy Cook v. Miranda Cook, 100 Mass. 194; Stewart v. Minnesota Tribune Co., 40 Minn. 101, 41 N. W. 457, 12 Am. St. Rep. 696; Newell on Slander & Libel, sec. 49, et seq."

To the same effect are Thomas v. McShan, 99 Okla. 88, 225 Pac. 713, and Wiley v. Oklahoma Press Publishing Co., 106 Okla. 52, 233 Pac. 224.

When the petition in this case is examined under this rule, it clearly appears that, even though the statement was libelous, but not libelous per se, no cause of action was proven by reason of the failure to allege and prove special damages.

This court in Wiley v. Oklahoma Press Publishing Co., supra, held:

"In determining whether the article is libelous per se, the article alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. The article must be defamatory on its face 'within the four corners thereof'"

—and said:

"(d) Injury to reputation and not to the feelings of the individual is the subject of redress. The language in the alleged libelous article must be such as to tend to lower plaintiff in the estimation of men whose standard of opinion the court can recognize. Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 Pac. 487; Rossiter v. N. Y. Press, supra; Cohen v. N. Y. Times Co., 138 N. Y. Supp. 206; Oklahoma Pub. Co. v. Kendall, 96 Okla. 194, 221 Pac. 762."

In Phoenix Printing Co. v. Robertson, supra, this court held:

"The fact that a publication may be unpleasant and annoy or irk the subject thereof, and may subject him to jest or banter, so as to affect his feelings, is not, standing alone, sufficient to make it libelous. In order to be libelous, it must tend to lower him in the opinion of men whose standard of opinion the court can properly recognize or tend to induce them to entertain an ill opinion of him."

The plaintiff was undoubtedly annoyed and irked by the publication of the unpleasant article and her feelings were undoubtedly injured thereby, but that is an injury not contemplated by our statute.

Plaintiff cites the following cases, to wit:

Spencer v. Minnick, 41 Okla. 613, 139 Pac. 130; Dimmitt v. McDowell, 60 Okla. 88, 159 Pac. 290; Hubbard v. Cowling, 36 Okla. 603, 129 Pac. 714; Kelly v. Roetzel, 64 Okla. 36, 165 Pac. 1150; Kee et al. v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494; Bratcher v. Gernert et al., 77 Okla. 12, 185 Pac. 1081; Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 Pac. 487; Matthews v. Oklahoma Publishing Co., 103 Okla. 40, 219 Pac. 947; Oklahoma Publishing Co. v. Kendall, 96 Okla. 194, 221 Pac. 762. Some of those cases contain statements which appear to be favorable to the plaintiff, but an analysis of them discloses that they are not in conflict with the rule herein announced.

It is clear to this court that the published article is not-libelous per se, that there was no allegation or proof of special damages, and the trial court properly sustained the demurrer to the evidence of the plaintiff.

The judgment of the trial court is affirmed.

LESTER, V. C. J., and HUNT, RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur. MASON, C. J., absent. CLARK, J., not participating.