**Bill AKINS, Appellee,**

v.

**ALTUS NEWSPAPERS, INC., an Oklahoma corporation dba Altus Times Democrat, Bob Gilmore, Sandra Hart and Craig Harris, Appellants.**

No. 48489.

Supreme Court of Oklahoma.

Oct. 4, 1977.

As Modified on Denial of Rehearing May 12, 1980.

---

8. *Southern Industrial Savings Bank v. Greene*, 224 So.2d 416 (Fla.App.1969).

_____

 

Keith Myers, Hollis, for appellee.

Robert S. Baker, Baker, Baker & Wilson, Oklahoma City, Whiteside & Watt, Altus, for appellants.

LAVENDER, Vice Chief Justice:

Bill Akins (Akins), appellee, brought suit for libel against Altus Newspapers, Inc.; Bob Gilmore, its publisher; Sandra Hart, its editor; and Craig Harris, its reporter, appellants. The libel is based on a published news item. Trial was to a jury with a verdict returned for Akins that awarded $5,000 general damages and $15,000 exemplary damages. Defendants appeal.

The published news item read:

"'INCIDENT' INVESTIGATED

"An investigation is beginning today by the District Attorney's office concerning an incident where an Altus police officer allegedly kidnapped a boy at gunpoint and then got in an altercation with a Jackson County Deputy.

"Paul Braun, district attorney, told The Altus Times-Democrat today that such an investigation is 'a policy matter with my office' whenever a complaint is lodged against a law officer.

"The district attorney declined to give the name of the family lodging the complaint.

"According to information received, two teenage youths got into a fight near Blair sometime last night with Altus police officer Bill Akins, a father of one of the boys, allegedly going to Blair and removing the other youth from a Blair home at gunpoint.

"The incident was apparently further complicated when relatives of the 'removed' youth called the Jackson County Sheriff's Department asking for help.

"Deputy Sheriff Bill Smith then reportedly found the auto, tried to stop it with siren and warning lights, and finally discharged his revolver in the air before the auto stopped.

"When the auto stopped, both Smith and Akins became embroiled in some type of altercation. Information received does not specify whether there was a fist fight.

"Neither Smith nor Akins could be contacted as of press time today concerning the incident."

Testimony at trial and detailed narratives of that evidence contained in the appeal briefs show an incident occurring the night of August 14, 1975, as found in broad outline in the published item. There were both large areas of agreement and deep disagreement on details of the involved incident presented to the jury by the trial witness. Much of that evidence is not material to this appeal.

Akins was a police officer. It is disputed if he was on duty that night at the time of, or after, the occurrence. Harris, the reporter, wrote the item the next day. It was published that same day after approval by the editor and the publisher. A retraction was sought and refused. After an outside investigation by the newspaper, another item was published August 28, some thirteen days later, that advised the use of the term "gunpoint" in the first article was erroneous.

Appellants argue (1) truth of the publication; (2) lack of actual malice; and (3) lack of damages.

Here, this appeal comes after jury verdict. In *Wat Henry Pontiac v. Pitcock*, Okl., 301 P.2d 203 (1956), this court's syllabus states:

"In a law action the verdict of the jury is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this court will not disturb its verdict and judgment based thereon."

The scope of this review is limited. We need only to determine if "there is any competent evidence reasonably tending to support the verdict." The instructions, as directions in reference to the law of the case guiding the jury,[1] are not an issue in this appeal.

---

1. *Midland Valley R. Co. v. Pettie*, 196 Okl. 52, 162 P.2d 543 (1945), in syllabus by the court, said:

"Instructions are directions in reference to the law of the case, guiding the jury in arriving at correct and right conclusions. * *."

Argument is made that the evidence only showed the truthfulness of the publication, for that affirmative defense is established when the publication is substantially true. *Gomba v. McLaughlin*, 180 Colo. 232, 504 P.2d 337 (1973) is cited. There the justification of every word in the defamatory matter was not required; rather, it was sufficient if the substance, the gist, the sting of the matter was true.

Even if *Gomba, supra,* is applied, we come to opposite conclusion here. The "sting" in this published news item is that Akins, a police officer, was alleged to have kidnapped or "removed" a youth from his home "at gunpoint." Appellants' second published article acknowledges the inaccuracy of the use of "gunpoint." Witness Lane, who was with Akins at the removal and whose grandson was with the Akins boy when the teenager fight occurred, testified of the youth voluntarily getting into the pickup upon his mother telling him to go ahead so the correct youth in the fight could be identified. This mother testified she saw no guns and Akins made no threat. Other evidence conflicted on the fact issue of the youth voluntarily leaving his home.

■ We do not weigh the evidence or the correctness of the finding of the facts by the jury. There was competent evidence that reasonably allowed the jury to find the gist of the article as to Akins was not so substantially true as to require a verdict for the appellants based on the affirmative defense of the truthfulness of the publication.

■ Briefs of the parties in this appeal agree the evidence does not sustain a finding the news item was published with knowledge it was false. A finding of actual malice must then be based on the publication being made with reckless disregard as to whether it was false or not. Again, the law of the case, as found in the instructions, is not the issue. On the law issue of actual malice, the jury was instructed, in part:

\* \* \* \* \* \*

"[T]he Plaintiff may not recover damages from the Defendant unless he has proved by clear and convincing evidence that the publication of the article was actuated by actual malice, that is, with knowledge that it was false or that it was published with a reckless disregard of whether it was false or not.

\* \* \* \* \* \*

"A reckless disregard means a conduct which is heedless and shows wanton indifference to consequences. To prove this the Plaintiff must produce sufficient evidence to permit the conclusion that the Defendants in fact entertained serious doubts as to the truth of its publication."

Appellants contend there was no evidence the defendant had serious doubts as to the truth of the publication. We do not agree with that interpretation of the directions guiding the jury. The jury was charged to determine if there was sufficient evidence of heedless conduct to show wanton indifference to consequence so as *to permit a conclusion by the jury* that the defendants entertained serious doubts as to the publication's truth.

Reporter Harris's testimony shows on the night of the incident, he was at the sheriff's office freelancing as a photographer in connection with a major drug raid. That independent job required him to be there all night and until about dawn. His information as to the incident came from overhearing, or engaging in, casual conversations with law officers around that office that night. The next morning, Harris overheard a one-sided telephone conversation of an assistant district attorney talking with his superior, the district attorney. That conversation's thrust was that there should be an investigation to determine, among other things, if a kidnapping at gunpoint occurred. Harris did read a written report by a law officer involved in the incident, but no reference was made to a kidnapping at gunpoint. The district attorney's office did advise him there would be an investigation because a police officer was involved. Harris made no personal contact with anyone involved in the incident before writing his news story and its publication.

Editor Hart read the story. She knew Harris had gone to the district attorney's office. Because the story mentioned the district attorney, she assumed Harris had checked with that official. Before reading the copy, Hart asked Harris if he had "checked it out." Harris replied, "Yes." There was no detailed discussion of the story between the editor and the reporter. Publisher Gilmore was shown the story by his editor. This is sometimes, but not usually, done. He inquired of Hart, "Can you verify this?" She said, "Yes." Gilmore said, "Run it." All three—the reporter, the editor, and publisher—acknowledged a real concern for, and the seriousness of, a news story that affects one's reputation. No other checking occurred prior to the publication of the first story.

There was evidence of heedless conduct to show wanton indifference to consequences. The jury found the evidence sufficient to permit the jury to conclude the defendants entertained serious doubts as to truth of the publication. This court will not disturb the jury verdict and the judgment based thereon. *Wat Henry Pontiac, supra.*

■ It is a matter of law for the court to determine if the publication was libelous per se,[2] as opposed to a fact determination for the jury as to the publication being libelous per quod. There are three classes as to words charged to be libelous: (1) Those not possible of defamatory meaning; (2) those reasonably susceptible of both a defamatory and an innocent meaning; and (3) those clearly defamatory on their face.[3] With the published news item containing words of "kidnapped a boy at gunpoint" and "removing the other youth from a Blair home at gunpoint," we place the publication in the third class. The news item is susceptible to only a meaning so as to be clearly defamatory on its face, and is libelous per se. A per se libel allows both general and special damages.[4] The more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering.[5] This was the type of actual injury sought to be proved in the present case. Appellants argue lack of evidence on this damage issue.

■ Here, Akins testified of his depression and confusion coming after the publication. After reading the article and with all the talk going around in terms of dismissal and suspension, his riding partner on the police force didn't ride with Akins for he "just didn't want to be part of it." Where there is *any* competent evidence reasonably tending to support the verdict, this court does not disturb it. *Wat Henry Pontiac, supra.*

A cross-petition in error by Akins sought reversal of an order of the trial court that denied attaching of certain items as cost. The order of the trial court is affirmed.

Affirmed.

DAVIDSON, WILLIAMS, BERRY, SIMMS and DOOLIN, JJ., concur.

HODGES, C. J., and BARNES, J., concur in part and dissent in part.

IRWIN, J., dissents.

**2.** *McKenney v. Carpenter*, 42 Okl. 410, 141 P. 779 (1914).

**3.** *Fite v. Oklahoma Pub. Co.*, 146 Okl. 150, 293 P. 1073 (1930).

**4.** *M. F. Patterson Dental Supply Company, Inc. v. Wadley*, (C.C. 10th, Okl.) 401 F.2d 167, 172 (1968) citing Restatement of the Law of Torts, Libel and Slander, Sections 621, 622.

**5.** *Martin v. Griffin Television, Inc.*, Okl., 549 P.2d 85 (1976).