## FINDLEY v. WILSON.

No. 12829—Opinion Filed Oct. 6, 1925.

Rehearing Denied Jan. 12, 1926.

**1. Libel and Slander—Sufficiency of Petition—Language Slanderous Per Se.**

An action for slander, where the petition alleges F. charged the plaintiff with the grossest kind of immorality, such language is slanderous per se, and the petition is good as against an objection of defendant to the introduction of any evidence at the trial.

**2. Trial—Demurrer to Evidence—Province of Jury.**

The jury are the exclusive judges of the facts, the weight of the evidence, and the credibility of the witnesses, and it is a settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove, and all inferences and conclusions that may be logically and reasonably drawn from the evidence. If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference.

**3. Libel and Slander—Words "Slanderous Per Se."**

In an action for slander, the words upon

which the same is predicated are taken in the most obvious and natural sense in which they would ordinarily be used and understood, and if, when given their ordinary natural and obvious meaning, they expose the person concerning whom they were used to public hatred, contempt, or obloquy, or which tend to deprive him of public confidence, or to injure him in his occupation, they are slanderous per se.

**4. Appeal and Error—Review— Conclusiveness of Verdict.**

In an action at law, where the case is tried to a jury and submitted under proper instructions given by the court, and there is any evidence reasonably tending to support the verdict, the same will not be disturbed on appeal.

(Syllabus by Ruth, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Murray County; T. P. Clay, Assigned Judge.

Action by G. W. Wilson against W. M. Findley. Judgment for plaintiff, and defendant appeals. Affirmed.

W. N. Lewis, for plaintiff in error.

Walter E. Latimer and Jesse H. Dunn, for defendant in error.

Opinion by RUTH, C. The parties herein will be designated as they appeared in the trial court.

Plaintiff's action was first brought against W. M. Findley and Mrs. W. M. Findley, but was afterwards dismissed as to Mrs. Findley. Petition alleges plaintiff was executive secretary of the Chamber of Commerce of the city of Pauls Valley, Garvin county, Okla., and was well known in said city, county, and state. That on May 9, 1920, plaintiff, with his wife, Lucile Wilson, a Mr. Nordin, and a young lady, drove from Pauls Valley to Sulphur, Okla., and on their return in the evening of the same day, and on account of heavy rains and the condition of the roads, they could not proceed further than Davis, Okla., where they were directed to the hotel kept by defendant, where they registered, plaintiff registering for himself and wife, Mrs. G. W. Wilson, Nordin, and the young lady each registering separately, and plaintiff requested the two men be assigned to one room, and Mrs. Wilson and the young lady friend assigned to a separate room. That after they had been assigned to their rooms, Mrs. Findley came up and ordered them out of the house, telling plaintiff and his wife they were not married; that they were "trash" and a bunch of whores: that she wasn't running

a whore house; that men were going to the women "like dogs to a slut." That defendant came to the room in which they were seated, and after a conference with his wife at the end of the hallway, defendant returned and used the same language ascribed to Mrs. Findley, and called the town marshal, repeated the language to him, and ordered the arrest of the parties. They were not arrested, but the officer directed them to another hotel across the street, where they spent the night. That in the morning, defendant continued to make these statements to W. L. Tuck, the town marshal, and to Charley Lyons, Dave Staughter, Bob Mc-Cargo, and Hon. F. W. Fagan, and to divers and sundry persons to plaintiff unknown. Plaintiff alleges actual damages to his business name and reputation, and prays damages, and because of the false, willful and malicious acts, prays exemplary damages.

Both defendants filed a demurrer to the petition, alleging several causes of action were improperly joined, and the defendants are sued as joint tort-feasors, and that the petition shows on its face that plaintiff's causes of action are separate. Defendant states in his brief that this is now a moot question, plaintiff having dismissed as to Mrs. Findley. Mrs. Findley, however, filed her answer, admitting G. W. Wilson and Mrs. Wilson, J. E. Nordin, and Miss Anna Lee Ferris, now Mrs. J. E. Nordin, registered at the hotel, as described, and admits she got into a controversy with members of the party over what she at that time thought was suspicious conduct on the part of one of the party, and "while in anger she may have spoken harshly to the plaintiff and sincerely regrets the same, and offers her apology." That she did not then, and does not now, know anything derogatory to the character of the plaintiff.

Defendant W. M. Findley filed a general denial, and further admits the parties registered at the hotel, as set forth in plaintiff's petition, denied he threatened to have them arrested, or called Officer Tuck. That so far as his personal knowledge goes, all the parties, including plaintiff, are of the highest character and integrity, and conducted themselves "properly and legally while in the hotel." That he was asleep when his wife got into the controversy with the party, and he tried to bring about an amicable adjustment and settlement.

On May 12. 1921, the cause was called for hearing and the jury returned a verdict for plaintiff fixing his actual damages at $500. and awarding him $400 exemplary or punitive damages, and defendant appeals and assigns as error: "First. The court erred in overruling objections of plaintiff in error to the introduction of any evidence on the part of defendant in error." Defendant did not demur to the petition on the ground that the facts therein set forth did not constitute a cause of action in favor of the plaintiff and against the defendant, and an examination of the petition discloses it was sufficient as against demurrer, and charged the defendant with using language which, in the absence of proof of its truth, was in the highest degree slanderous per se, and the petition further alleged its falsity, and that the same was uttered willfully and maliciously, and both actual and punitive damages are properly alleged, and the court committed no error in overruling the objections to the introduction of evidence on the part of the plaintiff. The defendant's brief on this point is confined exclusively to the citation of authorities holding the husband cannot maintain an action in his own name for slanderous or libelous publications directed against his wife, but we are not called on to pass upon this question, as the petition specifically alleges the language was applied to plaintiff, and, in effect, did mean and was intended to convey the impression that plaintiff was guilty of pandering: that is, of soliciting men to come to his wife's room for the purpose of having sexual intercourse with the wife, and that plaintiff was conducting a "whore house" in his rooms with his wife as one of the whores, and plaintiff was permitting men to "go to the women like dogs to a slut," for the purpose of sexual intercourse and no authority is cited, and we know of none, and trust we will never read one, wherein a husband is not permitted to introduce evidence of the use of such language applied to him and his wife when he files a proper petition for damages for slander.

Defendant assigns as error the overruling of defendant's demurrer to plaintiff's evidence.

W. L. Tuck, the city marshal of the town of Davis, testified defendant did call him to the hotel on the night in question; found all the parties in the lobby of the hotel; that defendant said, "We are having hell here." "These parties (plaintiff and his wife,—Nordin and the young lady, afterwards Mrs. Nordin) are stopping here and my wife claims she caught men going to them like dogs to a slut, and we want them taken somewhere." And that Mrs. Findley, in the presence of her husband and all the plaintiff's party, used the same language, and said the men were going in the room in

the manner described and she wanted them taken to jail. Tuck further testified that these expressions were used in the presence of others in the lobby, who were at the top of the stairs looking down into .the lobby; that Findley was "mad" and swore and used the words "God damn her"; that Findley said they (Mr. and Mrs. Wilson) claimed they were man and wife, "but they wasn't any such thing." Tuck refused to arrest them, as he had so many complaints from that hotel that would not stand up in court, and refused to make the arrest unless the Findleys swore to a complaint. He did take the plaintiff and his party from the hotel at the request of the Findleys, but directed them to a hotel across the street. That the Findleys kept repeating the charges over and over, and attacked the character of the plaintiff and all his party, and repeated it two or three times the next day when Tuck visited the hotel. Dave Slaughter, the constable, went to the hotel the next morning with Marshal Tuck, and Findley, the defendant, was mad and was "prancing" up and down the whole length of the lobby of the hotel saying, "God damn them, if they think they can come into my house and make a whore house out of it, I'll throw them out". That defendant stated men were going in and out of Wilson's room (No. 10), "like dogs going to a slut." He repeated this several times and people were going "backward and forward" through the lobby all the time Findley was angrily making these remarks.

Bob McCargo, a justice of the peace, testified defendant came to his office the day following the trouble in the hotel, and told witness a Dr. Shepard said men were going in this woman's (Mrs. Wilson's) room like dogs to a slut.

Plaintiff testified he was married in 1918 to the lady who was with him the night in question: that he came to Pauls Valley from Birmingham, Ala., to accept the position of executive secretary of the Chamber of Commerce; that his salary was $250 per month; that a report of the trouble in Davis reached Pauls Valley before plaintiff did, and as a consequence of the acts and language of defendant, the plaintiff and his wife were socially ostracized; that plaintiff lost the confidence of the board of directors of the Chamber of Commerce; could not get their co-operation. and so resigned his position and removed to Denver, Colo.

This was substantially the evidence of the plaintiff, and was sufficient as against demurrer, to have the question submitted to

the jury, which is the sole judge of the facts and the credibility of the witnesses, and it is a settled rule that a demurrer to the evidence admits every fact which the evidence in the slightest degree tends to prove, and all inferences or conclusions that may be reasonably and logically draw from the evidence. If the inference to be drawn from the evidence is a reasonable one, although not a necessary one, the court will not invade the province of the jury by taking from it the right to pass on the facts to be deduced from such inference. A demurrer to the evidence not only admits the truth of the evidence, but also the facts which the evidence in any degree tends to prove. Sartain v. Walker, 60 Okla. 258, 159 Pac. 1096; State Bank of Westfield v. Kiser, 46 Okla. 180, 148 Pac. 685; Blair v. Lewis, 57 Okla. 707, 157 Pac. 905; Kali Inla Coal Co. v. Ghinelli, 55 Okla. 289, 155 Pac. 606.

Defendant next assigns as error the admission in evidence of what Mrs. Findley said of the plaintiff and his party in the presence of Mr. Findley. The testimony objected to as disclosed by defendant's brief came from Marshal Tuck, who said:

"She said about the same thing Mr. Findley did, about those men and women up there and the men were going to them in that way, and also wanted them put out of there and thrown in jail, or something, that she didn't allow no such trash in her house."

The testimony of Wilson, objected to by defendant, was as follows:

"She shook her finger under my nose and said: 'Are you married?' and Mrs. Wilson and I both said, 'Of course, we are married,' and she shook her finger at me and said, 'You are a liar,' and I said, 'If you were a man, I would knock you down.' She said she was running a decent place, and she was not going to have a bunch of whores and poor white trash at her place."

These expressions of Mrs. Findley were made in the presence of defendant, her husband, who was jointly running the hotel with Mrs. Findley, and during the heated controversy, and while they were not sufficient to charge the defendant with slander. and perhaps were not under the strict rules of evidence admissible, in view of all the other evidence, we cannot say the defendant was prejudiced thereby. The language used, and epithets applied by the defendant to the plaintiff and his wife, reached the highest degree of slander and the lowest depths of infamy, and the smallness of the amount of the verdict returned evidenced

the fact that prejudice or passion did not sway the jury in arriving at such verdict.

Instructions Nos. 7 and 8, and "special instruction", are assigned as error. The instructions complained of charged the jury that the words complained of (repeating them) would be slander per se, and if the defendant, acting with his wife or alone. used the words and charged the plaintiff with immoral conduct, and of occupying the rooms for the purpose of having others visit the female member of the party for the purpose of having sexual intercourse and permitting men to go to the women like dogs to a slut, and evicted the plaintiff and his party from the hotel, and thereafter published the false, slanderous, and defamatory charges against the plaintiff, and if the jury found the charges were all false and untrue, their verdict should be for the plaintiff.

In determining whether language is libelous per se, it must be viewed stripped of all innuendoes, colloquium, or extrinsic or explanatory circumstances. The meaning of the phrase "per se" is "taken alone, in itself, by itself." Kee v. Armstrong Byrd & Co., 75 Okla. 84, 151 Pac. 572.

In an action for slander, the words upon which the same is predicted are taken in the most natural and obvious sense, in which they would ordinarily be used and understood. Smith v. Gillis, 51 Okla. 134, 151 Pac. 869.

The language used which, given its ordinary natural and obvious meaning, exposes the person concerning whom it was used to public hatred, contempt, or obloquy, or which tends to deprive him of public confidence or to injure him in his occupation, is slanderous per se. Spencer v. Minnick, 41 Okla. 613, 139 Pac. 130; Dimmett v. McDonald, 60 Okla. 88, 159 Pac. 290; Bratcher v. Gernert, 77 Okla. 12, 185 Pac. 1081. See Oklahoma Pub. Co. v. Kendall, 96 Okla. 194, 221 Pac. 762.

Whether the language alleged to have been used is slander per se is a question of law for the court. Whether the language was in fact used is a question for the jury to be determined from the evidence. We can scarcely conceive of more slanderous language than alleged in the petition, and the court did not err in instructing the jury that it would be, if found to have been used, slander per se. It is true the action was not brought for an unlawful eviction from the hotel, and reference to such eviction might have been eliminated from the instruction without destroying its force or effect. Its incorporation in the instruction added no weight thereto. There was positive evidence of the eviction, and this eviction was caused by the false charges made by the defendant against the plaintiff, and we can find no reversible error in the instructions complained of. The evidence reasonably sustained the verdict, and in an action at law, where the case is tried to a jury and submitted under proper instructions given by the court, and there is any evidence reasonably tending to support the verdict, the same will not be disturbed on appeal. West v. Oakley, 84 Okla. 59, 202 Pac. 318; Sapp v. Hartford Fire & Marine Ins. Co., 85 Okla. 87, 206 Pac. 814; Tulsa Entertainment Co. v. Greenlees, 85 Okla. 113, 205 Pac. 179; Beggs Oil Co. v. Deardorf, 97 Okla. 33, 222 Pac. 535.

We therefore recommend the judgment of the trial court be affirmed.

By the Court: It is so ordered:

Note.—See under (1) 36 C. J. pp. 1175, § 59 (Anno), 1214, § 160; 37 C. J. p. 31. § 347. (2) 38 Cyc. pp. 1512, 1516, 1518, 1543. 1548. (3) 36 C. J. pp. 1150, § 17, 1155, § 21, 1180, § 69; 17 R. C. L. pp. 286, 287; 3 R. C. L. Supp. p. 645; 4 R. C. L. Supp. p. 1115; 5 R. C. L. Supp. p. 937. (4) 4 C. J. p. 851, § 2834; 2 R. C. L. p. 194; 1 R. C. L. Supp. p. 433: 4 R. C. L. Supp. 90; 5 R. C. L. Supp. p. 79.