**OWENS et al. v. CLARK.**

No. 20493. Opinion Filed Dec. 1, 1931.

Rehearing Denied Jan. 12, 1932.

Christy Russell and Jos. W. Bailey, Jr., for plaintiff in error O. O. Owens.

Moss, Breckenridge & Young and Beckenridge & Bostick, for plaintiff in error Tulsa World.

D. Haden Linebaugh and John Barry, for defendant in error.

CHEATHAM, Special Justice. This action was commenced in the district court of Atoka county on December 27, 1927, by J. W. Clark against O. O. Owens and World Publishing Company. The parties will be referred to here as plaintiff and defendants as in the lower court.

The petition consisted of four causes of action, based upon the publication of an article in the Tulsa World on October 24, 1926, October 31, 1926, November 1, 1926, and November 2, 1926. Each publication constituted a separate cause of action.

Each cause of action charged a false, malicious, unprivileged, defamatory publication, which falsely imputed and charged this plaintiff with the commission of crime and with malfeasance and willful misconduct in his office as Justice of the Supreme Court, and which false, malicious, unprivileged, defamatory communication did expose this plaintiff to public hatred, contempt, ridicule, obloquy, and which tended to deprive him of public confidence and to injuriously affect him in his occupation and profession as an attorney, and in his office as a member of the Supreme Court.

The defendants answered by way of general denial and specific denials and by way of justification and privileged communication. Defendants further pleaded the statutes of limitation. The plaintiff replied by way of general denial and specially pleaded that Mr. Justice Hunt nor any other person was authorized to act for the plaintiff.

The cause was tried to a jury and judgment rendered for the plaintiff and appeal prosecuted to this court.

All members of the Supreme Court of the state of Oklahoma having filed their disqualifications to sit in this cause, the Governor of the state of Oklahoma, Honorable William H. Murray, appointed J. B. Moore, Special Chief Justice, John F. Thomas, Sr., L. V. Orton, Wm. L. Cheatham, W. N. Redwine, Claude Hendon, Joseph H. Ford, J. E. Falkenberg, and A. S. Dickson, to serve as Special Justices of the Supreme Court to hear this cause.

The article complained of is in words and figures as follows, to wit:

"So that the people may know why I am a candidate for state representative.

"I have never had any political ambition. I have none now. I seek election to the Legislature for the purpose of rendering such service as constructive thought and fearless and aggressive action will permit, including particularly initiating and pressing

"A Thorough and Searching Investigation of The Conduct and Practices of the Supreme Court.

"Courts, as a whole, and particularly the highest court in the state, should be respected, and referred to with respect. But when an undercurrent of gossip and rumor becomes so widespread among the lawyers that the Supreme Court no longer has the confidence and respect of the bar (as lawyers of this state are collectively referred to) the whole people should be informed, so as to avoid the pitfalls of misplaced confidence and trust.

"The public is now well informed on the Supreme Court's attitude with respect to matters political, but only the lawyers, and those laymen who have been unfortunate enough to learn by bitter experience with the Supreme Court, can know the attitude of certain of its members on matters commercial and financial.

"The Supreme Court has recently been bitterly assailed by practically every newspaper in the state and charged with attempting to legalize alleged fraud. If the Supreme Court will condone alleged corruption in political matters, what will it do, and what has it done, in financial and commercial controversies?

"The Supreme Court has been charged, because of its action in the Dabney-Searcy political controversy (121 Okla. 193, 249 P. 381) with depriving the citizens of their constitutional rights. Certain members of the Supreme Court have also been charged with lending its power, and making of it, the lower courts, and the legal machinery of the state, a tool for use in private controversies, in depriving or attempting to deprive citizens of their property, and in looting or attempting to loot business enterprises. Such procedure denies the injured individuals other constitutional rights than that of suffrage. It denies the citizens the right to own property.

"The Supreme Court, through the actions of certain of its members, has arrogated to itself all the power of all branches of the state government, legislative, executive, and judicial. Certain members of the court have made their **will** and **desire** the **law.** They have thereby made the Supreme Court a menace to government, society and the people's sacred rights and welfare.

"The vacillating attitude recently displayed by the Supreme Court in political controversies is nothing less than a sacrifice of principle and conviction for expediency. The Dabney-Searcy opinion is but a leering insult to the intelligence of the people of the state:

Second Column:

"A Perfect Demonstration that Politics, Intrigue and Influence Center into the Consideration by the Supreme Court of Controversies Coming before it.

"Justice Mason, as a result of a decision of the Supreme Court, obtained his position on that court under a cloud of suspicion such as now overshadows Dabney. With Justice Mason occupying such an unenviable position, why, then was the Dabney-Searcy Case assigned to him to write the court's opinion? Is there anyone so credulous as to believe he would have written any opinion other than the one he did? And he cited the court's opinion in his own case as a precedent for his handiwork for Dabney! What else could be expected?

"The Dabney-Searcy opinion is admitted to be an attempted outrage of the people's rights. How many equally outrageous opinions have been written by the Supreme Court in private controversies? Only the lawyers and the extremely experienced laymen know. The whole people should be informed.

"Since statehood every other branch of the state government has been either suspected, criticized or investigated or impeached. In the past, the Supreme Court has only been suspected; recently it has been criticized. It should now be investigated. The Legislature is the only body empowered to make such investigation and apply the proper remedy.

"Lack of information on the part of the layman, as well as lack of knowledge of the correct way to proceed, has prevented any aggressive steps being taken. Fear and professional selfishness on the part of the lawyers have restrained them in any attempt to correct the known and suspected evils existing in the Supreme Court.

"It is for the purpose of exposing such conditions, and applying the proper remedy, that I seek election to the Legislature. It is for the purpose of eliminating, if possible, the contempt for law, facts, evidence, precedent, equity, and justice heretofore exhibited by certain members of the Supreme Court, that I am a candidate for election as a state representative."

(Across bottom of page)

"I do not want the job for the money.

"O. O. Owens.

"This space paid for by O. O. Owens,— NOT by his friends."

There are many assignments of error. We shall consider those most pertinent and that dispose of this appeal. The first is that the venue statutes of the state of Oklahoma that permit a domestic corporation to be sued in any county in the state where any part of the alleged cause of action arose, when taken in connection with the venue statutes as to individuals and foreign corporations, is a denial of the equal protection of the laws and in contravention of the equal protection clause of the Fourteenth Amendment to the Constitution of the United States.

The second question raised is the statutes of limitation.

The third is whether the publication is actionable per se or per quod, and if not actionable per se, does the petition allege a cause of action and does the proof authorize a recovery?

No. 1. Corporations are creatures of the state. They owe their existence to the grace of the state. The state may well prescribe rules and regulations for their conduct and their amenability to the courts of the state. They are not natural persons and are not entitled to the inalienable rights of free men. The business done by a corporation and its mode of procedure in business transactions may well be taken into account when the state permits a corporation to be formed, or to transact business within its boundaries and the state may well classify such unnatural persons as to the venue laws of the state and the form in which they may sue and be sued.

As by Mr. Justice Holmes stated, in the case of Vain Peanut Company v. Pinson, 282 U. S. 499, it is "not a geometrical equation between a corporation and a man, but whether the difference does injustice to the class generally, even though it bear hard in some particular case."

The state's discretion in fixing its venue laws is and should be large.

When a corporation is organized under the laws of a state, it is deemed to submit itself to all of the reasonable rules and regulations prescribed by the statutes of the state, its creator, and under which it was brought into existence. Being a creature of the state and enjoying the right to exist by the grace of the state, it cannot fundamentally claim the rights, benefits, and immunities of a natural person and must, therefore, submit itself to all of the reasonable rules and regulations imposed by its creator, and enjoying the unnatural right to exist, there can be no injustice to the class generally in permitting it to be sued and proceeded against in the courts of this state in jurisdic-

tions other than its domicile, while a more restricted rule is applied to natural persons.

It is, therefore, our opinion that the trial court was right in holding that the district court of Atoka county had jurisdiction in this action over the defendants.

Nos. 2 and 3. The defendants raised the question and pleaded the statute of limitations on every possible occasion. They relied upon the fourth paragraph of section 185 of the Statutes of Oklahoma, 1921. In order to toll the right to bring this action in Atoka county more than one year after the cause of action accrued, the plaintiff pleaded the saving provision of section 190, Comp. Stats. 1921.

The statutes applicable to this issue read as follows:

Section 231, Comp. Stats. 1921: "A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition and causing a summons to be issued thereon."

Section 187, Comp. Stats. 1921: "An action shall be deemed commenced, within the meaning of this article, as to each defendant, at the date of the summons which is served on him. * * * An attempt to commence an action shall be deemed equivalent to the commencement thereof, within the meaning of this article, when the party faithfully, properly, and diligently endeavors to procure a service. * * *"

Section 190, Comp. Stats. 1921: "If any action be commenced within due time, and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action, otherwise than upon its merits, and the time limited for the same shall have expired, the plaintiff, or, if he die, and the cause of action survive, his representatives, may commence a new action within one year after the reversal or failure."

The plaintiff, in his petition, in order to toll the statutes, made the following allegation:

"That this plaintiff did on the 12th day of September, 1927, file suit against the defendants, and each of them, on the same and identical cause of action in the district court of Oklahoma county, which action failed otherwise than on its merits by reason of a dismissal without prejudice having been entered on the 24th day of December, 1927."

Applying the liberal rule and doctrine of pleading, we hold that this allegation was sufficient to entitle the plaintiff to prove facts sufficient to show the proper commencement of the action in Oklahoma county, but we further hold that the plaintiff wholly failed by any competent testimony to prove any fact or circumstance that would sustain the allegation of the petition and that, therefore, the demurrer of the defendants at the close of the testimony of the plaintiff should have been sustained.

The testimony in support of this allegation is, at most, a mere conclusion. It is as follows:

"Q. Did you prepare and cause to be filed in the Oklahoma county district court, a suit on behalf of Judge Clark against O. O. Owens and the World Publishing Company? A. Yes, sir. Q. Have you a copy of the petition as filed in the district court of Oklahoma county in your possession? A. I hold in my hand a typewritten duplicate copy, or carbon copy of the petition as it was prepared and filed in the district court of Oklahoma county and was filed prior to the 24th day of October, 1927. Q. Was that suit caused to be dismissed, through you, by the plaintiff without prejudice? A. Yes, sir; on the 24th day of December, 1927, the cause came up and I dismissed that case in the district court of Oklahoma county without prejudice."

An action is commenced in this state by the filing of a proper petition in a court having jurisdiction and causing summons to be issued thereon. The filing of the petition is not sufficient. There must be something else, that is, a summons issued thereon and served or a bona fide attempt to serve the same. Section 231, Comp. Stats. 1921, taken in connection with section 187, an action is deemed to be commenced as to each defendant on the date of the summons which is served on the defendant or attempted to be served. So that if the petition was filed in Oklahoma county and Oklahoma county was a proper county in which to file said action, there is yet a total failure to show, first, that a summons was issued; second, that the summons was served on the defendants, or attempted to be served. We cannot presume that this was done. The testimony fails to disclose that this was done. There being a total want and failure of testimony to prove the essential elements of the commencement of an action in Oklahoma county, the plaintiff must be held to have failed to show facts sufficient to toll the statute and to warrant a holding that the commencement of the action in Atoka county after the expiration of one year from the publication of said articles was within the saving clause of the statute, Montgomery v. Hogan, 76 Okla. 243, 185 P. 81; Blakeney v. Francis, 105 Okla. 11, 231 P. 464.

The burden of proof was upon the plaintiff to properly allege and prove facts sufficient to toll the statute under section 190, Comp. Stats. 1921.

In the case of Shaw v. Dickinson, 65 Okla. 186, 164 P. 1150, this court said:

"It seems clear that in this case the petition of the plaintiff shows on its face that his cause of action was barred by our statutes of limitation, and defendant having pleaded such bar, it was incumbent on plaintiff to plead and prove facts sufficient to take his cause of action out of the bar of the statute."

This same doctrine was followed and announced in the case of Torrey v. Campbell, 73 Okla. 201, 175 P. 524, in which we find this language:

"We therefore deduce the rule to be in this state that when a plaintiff states a cause of action, which is shown by the petition or bill of particulars to be barred by the statute of limitation applicable to such a cause of action and the defendant interposes a plea of the statutes of limitation, the burden is on the plaintiff to plead and prove facts relieving such action from the bar of the statutes of limitation." Bayers v. Gamblin, 130 Okla. 82, 265 P. 650.

We, therefore, conclude and hold that applying the liberal rule as to pleading, yet the plaintiff wholly failed in his testimony to show that this action was commenced in Oklahoma county, it being necessary, in addition to the filing of the petition, to affirmatively show that the summons was issued and served upon the defendants, or some excuse given and shown why the summons could not be served upon the defendants, and the plaintiff having failed to make such proof, the demurrer to the plaintiff's testimony should have been sustained and the jury instructed to render a verdict in favor of the defendants.

No. 4. The defendants raised the further question that the article upon which this suit is founded is not libelous per se.

The statute defines libel as follows (Comp. Stats. 1921, section 495):

"Libel is a false or malicious unprivileged publication by writing, printing, picture or effigy, or other fixed representation to the eye which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation."

The statute defines slander as follows (Comp. Stats. 1921, section 496):

"Slander is a false and unprivileged publication other than libel, which:

"First, Charges any person with crime or with having been indicted, convicted or punished for crime.

"Second. * * *

"Third. Tends directly to injure him in respect to his office, profession, trade or business either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profits.

"Fourth. * * *

"Fifth. Which, by natural consequences, causes actual damage."

The lower court in its instructions failed to say whether the article was libelous per se or not. The instructions as a whole seemed to indicate that the court did consider the article libelous per se, inasmuch as the cause was submitted to the jury on the question of general damages.

Whether an article is libelous per se or not is a question of law for the court. McKenney v. Carpenter, 42 Okla. 410, 141 P. 779; Findley v. Wilson, 115 Okla. 280, 242 P. 565.

Section 5 of the plaintiff's petition, the charging part of the petition is as follows, to wit:

"5. That the defendants, O. O. Owens, World Publishing Company, and Eugene Lorton, did, on the 24th day of October, 1926, print and publish, in the edition of the said Tulsa Daily World of that date, of and concerning this plaintiff, a false, malicious, unprivileged defamatory communication which falsely imputed and charged this plaintiff with the commission of crime and with malfeasance and willful misconduct in his office as justice of the Supreme Court, and which false, malicious, unprivileged, defamatory communication did expose this plaintiff to public hatred, contempt, ridicule, obloquy and which tended to deprive him of public confidence and to injuriously affect him in his occupation and profession as an attorney, and in his office as a member of the Supreme Court."

The court in his instruction defined libel and the issues presented to the jury in the following language, to wit:

"No. 9. You are instructed that under the statutes of this state, libel is a false or malicious, unprivileged publication by writing, printing, pictures, or effigy or other fixed representation to the eye which exposes any person to public hatred, contempt, ridicule or obloquy, or which tends to deprive him of public confidence, or to injure him in his occupation."

The charging part of the petition says that the article complained of "falsely imputed and charged this plaintiff with the commission of crime and with malfeasance and with willful misconduct in his office as Justice of the Supreme Court."

We think the court was correct in thus

limiting the issues to the jury to the sole question of libel as defined in section 495, supra.

The article, to our minds, did not charge the plaintiff with the commission of a crime or with malfeasance or willful misconduct in office.

For the article to be libelous per se the language used therein must on its face show that the derogatory statements, taken as a whole, refer to the plaintiff and not to some other person.

Taking this article as a whole, without the aid of extrinsic facts, we are unable to say that it refers to the plaintiffs. It did mention Justice Mason. It did refer to certain members of the Supreme Court. From the four corners of the article and without the aid of extrinsic facts, we cannot see how it is possible that any person reading the article could apply the same to the plaintiff in this cause. The article was not published about the Supreme Court, but about certain members of the Supreme Court, specifically naming Justice Mason.

In the case of Hargrove v. Oklahoma Press Publication Co., 130 Okla. 76, 265 P. 635, the article there complained of was concerning one William Hargrove. The article was headed "Negro Can Leave Jail If He Keeps on Going." The article then states that Hargrove's wife appeared at the office of the United States Marshal and paid his fine. William Hargrove and his wife were white persons and the wife brought suit alleging that the article falsely imputed and charged that the plaintiff was the wife of a negro. The court in that case said that the article did not purport to be about the plaintiff. The language used is as follows:

"We cannot see in the article anything reflecting upon the plaintiff and she cannot import into it, by her mere say-so, a meaning different from the plain, unambiguous intent of the words. The article on its face contained no libel on her. If it related to her, it was only by reason of extrinsic facts and circumstances."

She was as much a member of the Hargrove family as the plaintiff was a member of the Supreme Court.

We do not believe that any person, without the aid of extrinsic facts, by reading the article referred to would or could come to the conclusion that it referred to the plaintiff.

We are not unmindful of the rule that one who publishes matter about a board or jury or family in its collective capacity assumes the risk of its being libelous.

No special damages were alleged and none were attempted to be proved. The court submitted the issues to the jury upon the question of damages generally; the language was compensatory.

In the case of M., K. & T. Ry. Co. v. Watkins, 77 Okla. 270, 188 P. 99, it was said:

"In an action for libel, special damages must be alleged and proved, and it is error to instruct the jury on such damages in the absence of such allegation and proof."

The article not being libelous per se, and no special damages alleged and none proved, the demurrer to the plaintiff's testimony should have been sustained.

In the case of Hargrove v. Oklahoma Press Publishing Co., supra, the court said:

"No special damages are alleged. Therefore, if said publication is not libelous per se, the action of the trial court in sustaining the demurrer to the plaintiff's petition was proper." Following Matthews v. Oklahoma Publishing Co., 103 Okla. 40, 219 P. 947; Kee v. Armstrong, Byrd & Co., 75 Okla. 84, 182 P. 494.

In the case of Fite v. Oklahoma Publishing Co., 146 Okla. 150, 293 P. 1073, this question was before the court. The court said:

"There is no fixed rule, by which the court can determine whether or not a statement is libelous per se, and the statement alleged to be defamatory must be examined before it can be determined whether or not it is libelous per se."

The court says that the distinction between libel per se and libel per quod has long been recognized by this court.

From our reading of the Hargrove Case and the Fite Case, they each proceeded upon the theory that the article complained of was not libelous per se.

We hold that in this case the article was not libelous per se, and had it been libelous per quod, no cause of action was proved by reason of the failure to allege and prove special damage.

While the article complained of was bitter and a severe criticism upon the official acts of the Supreme Court and of certain of its members, yet under the law of privileged communications and the right of citizens to criticize the official acts of their servants, we believe it would be restricting the rule of privileged communications too far to say that the article was libelous upon the Supreme Court as a whole, and plaintiff not being specifically referred to therein, and we being unable from reading the entire article

to single out plaintiff as the object of the publication, we must conclude that the same is not libelous per se, and that the demurrer to plaintiff's testimony should have been sustained.

For the reasons herein assigned, the judgment in this cause is reversed and held for naught and this cause remanded to the district court of Atoka county, with instructions to dismiss the petition of the plaintiff.

THOMAS, ORTON, REDWINE, and FORD, JJ., concur. MOORE, C. J., and HENDON, FALKENBERG, and DICKSON, JJ., dissent.

ORTON, J. (concurring). In this action, while I am concurring in the majority opinion, I want to set forth my independent views.

I join in with the majority opinion in saying that this action was properly instituted in Atoka county, and that the court had jurisdiction of the action.

I am also of the opinion that the plaintiff did not prove sufficient facts to toll the one-year statute of limitations; there was no evidence introduced to actually show the commencement of an action in Oklahoma county. There was no evidence to show that a summons had been issued or that the defendants or either of them had entered their appearance in the case, or had been served with summons, or had filed any pleadings in the case. Certainly the filing of the petition is not commencing an action. Some of these other things may have been done, after the petition was filed, but the record is silent as to those facts, and this case would have to be reversed and a new trial granted upon that ground if for none other.

In the case in Atoka county, the plaintiff recovered a judgment of $50,000, and an appeal has been properly lodged in the Supreme Court in this state. So that the bench and bar may fully know my reasons for holding that the published advertisement is not libelous per se, I am going to set out the petition in full that was filed in Atoka county. It will be observed from a careful reading of the petition that it must have been drawn upon the theory that the advertisement was libelous per quod and not per se.

The petition is in words and figures as follows, to wit:

"Petition.
"First Cause of Action.
"Comes now the above-named plaintiff, and for his first cause of action against the above-named defendants and each of them, alleges and states:

"1. That the World Publishing Company, one of the defendants above named, is and was a corporation duly organized, created and existing under and by virtue of the laws of the state of Oklahoma, with its principal place of business at Tulsa, Okla. That it is and was the owner and publisher of the Tulsa Daily World, a daily newspaper printed and published in Tulsa, Okla., and of general circulation throughout the entire state of Oklahoma.

"2. That the defendant Eugene Lorton is and was employed by the defendant World Publishing Company as the managing editor of the Tulsa Daily World, and as such managing editor of such newspaper it was his duty to supervise and examine, or cause to be supervised and examined, all communications printed and published in said newspaper and to exercise reasonable diligence in ascertaining the truthfulness of all communications published therein, and that by virtue of his employment was required to ascertain and know the truthfulness of all publications appearing in said newspaper.

"3. That this plaintiff is a duly licensed attorney at law and has been engaged in the practice of such profession for more than ten years within the state of Oklahoma. That, in November, 1924, he was duly elected to the office of Justice of the Supreme Court, and in January, 1925, he took the oath of office, qualified, and has since said time been one of the duly elected, qualified, and acting justices of the Supreme Court of Oklahoma. That plaintiff has an extensive acquaintance throughout the state of Oklahoma, and is known by all his acquaintances and by the citizenship generally of the state as one of the members of the Supreme Court of Oklahoma.

"4. That this plaintiff, as a justice of the Supreme Court of the state of Oklahoma, after proper assignment, prepared an opinion in the case of Riverside Oil & Refining Company, a corporation, O. O. Owens, G. R. LeFever, E. E. Frasher, and B. L. Brookens, Plaintiffs in Error, v. S. L. Lynch et al., Defendants in Error, said cause being numbered 13646, and that the opinion so prepared by this plaintiff was by the court adopted and approved. That the defendant O. O. Owens was and is the same and identical O. O. Owens that was the plaintiff in error in cause No. 13646. That said cause was an appeal from a judgment, order, and decision of the district court of Oklahoma county, rendering judgment in favor of the Riverside Oil & Refining Company and against the said O. O. Owens, in the sum of $93,324.84, as the amount of the Riverside Oil & Refining Company's funds unlawfully expended by him in connection with certain leases, and a further judgment for $2,500 against the said O. O. Owens, because of illegal profits made by him in connection

with a certain P. E. McGee contract. That said opinion was prepared by this plaintiff and handed down by the Supreme Court of this state, of which this plaintiff was a member, on the ____ day of ____, 1925. That the defendant O. O. Owens, on August 31, 1925, at a special meeting of the stockholders of the Riverside Oil & Refining Company, made the charge that the opinion was so 'wholly inconsistent that it was a reflection upon the intelligence of the gentleman (this plaintiff) who occupies the unpleasant and unenviable position of being its author.' That the defendant O. O. Owens further made the charge that 'If I (defendant Owens) had been the author of such a document, I (defendant Owens) believe I (defendant Owens) would have apologized for it also.' That at said meeting the defendant O. O. Owens charged the plaintiff and other members of the Supreme Court of this state with willful misconduct in their office in the rendition of said opinion. That the minutes and remarks of the said defendant O. O. Owens, at said meeting, were caused to be prepared, printed, and published in a certain pamphlet or book called, 'Done in Oil,' and that said book or pamphlet called 'Done in Oil,' was put into extensive circulation. That after this plaintiff had, for the Supreme Court, prepared the opinion in cause No. 13646, (Riverside O. & Ref. Co. v. Lynch, 114 Okla. 198, 243 P. 967) the defendant O. O. Owens caused to be filed in the district court of Tulsa county, Okla., on the 23rd day of June, 1926, a certain civil action numbered 36361, wherein the defendant O. O. Owens was plaintiff and this plaintiff and the Honorable Fletcher Riley, then an associate justice of the Supreme Court of this state, were made defendants, and in which said petition the said defendant O. O. Owens charged:

" 'About the first Monday in January, 1925, the defendants J. W. Clark and Fletcher Riley became the duly elected, qualified, and acting members of the Supreme Court of the state of Oklahoma; and plaintiff avers that he is informed and believes, and therefore avers the fact to be, that thereafter the defendant J. W. Clark (this plaintiff), pretending to act as a Justice of the Supreme Court of the state of Oklahoma, but acting without the authority of the said court, prepared and caused to be filed in the office of the clerk of said court a written document styled an opinion (the opinion in cause No. 13646 in the Supreme Court above referred to) by the terms of which the pretended judgment and decree heretofore exhibited was affirmed in all things; * * * and plaintiff states and avers that he is informed, and believes and therefore pleads, that said 'opinion' so written and filed as aforesaid by the defendant J. W. Clark (this plaintiff) did not receive the concurrence of the majority or quorum of said court, and notwithstanding its having been written and filed in the office of the clerk of said court, as aforesaid, the same was not the judgment of said court, and expressed no judgment or opinion of said court, but was the private act of the defendants J. W. Clark (this plaintiff), and Fletcher Riley, and George M. Nicholson.'

"That a true and correct copy of the petition filed by the plaintiff in that action is attached hereto under mark of exhibit 'A' and made a part hereof. That the defendants and each of them have in their possession copies of the pamphlet or booklet referred to above as 'Done in Oil.' That said pamphlet, 'Done in Oil,' is a book containing 250 printed pages and it is impracticable to attach a copy of the same to this petition. That the action of the defendant O. O. Owens, in filing the suit against this plaintiff in the district court of Tulsa county, Okla., was announced and published by the defendants, The World Publishing Company and Eugene Lorton, in their newspaper, The Tulsa World; that the fact that the defendant O. O. Owens had so sued and specifically charged and identified this plaintiff in said suit as being one of the certain Justices of the Supreme Court, who he claimed and contended had been guilty of willful misconduct in office, was thereby published and advertised by the defendant The Word Publishing Company, a corporation, in the Tulsa Daily World, to its various subscribers, purchasers, and readers, on the 24th day of June, 1926, a copy of such publication being in the possession of the defendants and each of them, and for such reason a copy is not hereto attached as an exhibit.

"5. That the defendants O. O. Owens, World Publishing Company, and Eugene Lorton, did, on the 24th day of October, 1926, print and publish, in the edition of the said Tulsa Daily World of that date, of and concerning this plaintiff, a false, malicious, unprivileged, defamatory communication which falsely imputed and charged this plaintiff with the commission of crime and with malfeasance and willful misconduct in his office as Justice of the Supreme Court, and which false, malicious, unprivileged, defamatory communication did expose this plaintiff to public hatred, contempt, ridicule, obloquy, and which tended to deprive him of public confidence and to injuriously affect him in his occupation and profession as an attorney, and in his office as a member of the Supreme Court. Said communication appearing in said Tulsa Daily World occupied an entire page of said newspaper, sensationally arranged, and was in words and figures as follows, to wit:

" 'So That The People May Know Why I Am A Candidate For State Representative.

" 'I have never had any political ambition. I have none now. I seek election to the Legislature for the purpose of rendering such service as constructive thought and fearless and aggressive action will permit, including particularly initiating and pressing.

" 'A Thorough and Searching Investigation of the Conduct and Practices of the Supreme Court.

" 'Courts as a whole, and particularly the highest court in the state, should be respected, and referred to with respect. But when an undercurrent of gossip and rumor becomes so widespread among the lawyers that the Supreme Court no longer has the confidence and respect of the bar (as the lawyers of the state are collectively referred to), the whole people should be informed, so as to avoid the pitfalls of misplaced confidence and trust.

" 'The public is now well informed on the Supreme Court's attitude with respect to matters political, but only the lawyers, and those laymen who have been unfortunate enough to learn by bitter experience with the Supreme Court, can know the attitude of certain of its members on matters commercial and financial.

" 'The Supreme Court has recently been bitterly assailed by practically every newspaper in the state and charged with attempting to legalize alleged fraud. If the Supreme Court will condone alleged corruption in political matters, what will it do, and what has it done, in financial and commercial controversies?

" 'The Supreme Court has been charged, because of its action in the Dabney-Searcy political controversy, with depriving the citizens of their constitutional rights. Certain members of the Supreme Court have also been charged with lending its power, and making of it, the lower courts, and the legal machinery of the state, a tool for use in private controversies, in depriving or attempting to deprive citizens of their property, and in looting or attempting to loot business enterprises. Such procedure denies the injured individuals other constitutional rights than that of suffrage. It denies the citizens the right to own property.

" 'The Supreme Court, through the actions of certain of its members, has arrogated to itself all the power of all branches of the state government, legislative, executive, and judicial. Certain members of the court have made their will and desire the law. They have thereby made the Supreme Court a menace to government, society, and the people's sacred rights and welfare.

" 'The vacillating attitude recently displayed by the Supreme Court in political controversies is nothing else than a sacrifice of principle and conviction for expediency. The Dabney-Searcy opinion is but a leering insult to the intelligence of the people of the state.

" 'Second column:

" 'A Perfect Demonstration That Politics, Intrigue, and Influence Enter Into the Consideration by the Supreme Court of Controversies Coming Before It.

" 'Justice Mason, as a result of a decision of the Supreme Court, obtained his position on that court under a cloud of suspicion such as now overshadows Dabney. With Justice Mason occupying such an unenviable position, why, then, was the Dabney-Searcy Case assigned to him to write the court's opinion? Is there anyone so credulous as to believe he would have written any opinion other than the one he did? And he cited the court's opinion in his own case as a precedent for his handiwork for Dabney! What else could be expected?

" 'The Dabney-Searcy opinion is admitted to be an attempted outrage of the people's rights. How many equally outrageous opinions have been written by the Supreme Court in private controversies? Only the lawyers and the extremely experienced laymen know. The whole people should be informed.

" 'Since statehood every other branch of the state government has been either suspected, criticized, or investigated or impeached. In the past, the Supreme Court has only been suspected; recently it has been criticized. It should now be investigated. The Legislature is the only body empowered to make such investigation and apply the proper remedy.

" 'Lack of information on the part of the layman, as well as lack of knowledge of the correct way to proceed, has prevented any aggressive steps being taken. Fear and professional selfishness on the part of the lawyers have restrained them in any attempt to correct the known and suspected evils existing in the Supreme Court.

" 'It is for the purpose of exposing such conditions and applying the proper remedy, that I seek election to the Legislature. It is for the purpose of eliminating, if possible, the contempt for law, facts, evidence, precedent, equity, and justice, heretofore exhibited by certain members of the Supreme Court, that I am a candidate for election as a state representative.

"Across bottom of page:

" 'I Do Not Want The Job For The Money. O. O. Owens.

" 'This space paid for by O. O. Owens—NOT by his friends.'

"That the phrase and reference to 'certain members of the Supreme Court' contained in said libelous and defamatory article above quoted, was by reason of the action of the defendant O. O. Owens, in charging and attacking this plaintiff in his pamphlet or booklet 'Done in Oil,' and by reason of the defendant O. O. Owens having filed suit in the district court of Tulsa county against this plaintiff, charging this plaintiff with willful misconduct in office; and by reason of the action of the defendants World Publishing Company and Eugene Lorton, stating and publishing in the Tulsa Daily World that the defendant O. O. Owens had so sued this plaintiff and had so charged this plain-

tiff in said action with willful misconduct, bribery, and corruption in office, caused each and all of the readers of the above-quoted libelous and defamatory article to know and understand that portion of the charge referring to 'certain members of the Supreme Court,' as referring to this plaintiff. That this plaintiff has for a number of years been and is now a legal resident of Atoka county, Okla., and intimately and well known to the citizens of Atoka county.

"6. That the said Tulsa Daily World and the edition containing the said libelous communication was extensively circulated throughout Atoka county, and was received and read by a great number of the citizens of Atoka county. That the defamatory charges, inferences, and insinuations concerning this plaintiff in said communication are false and untrue and were by the defendants known to have been false and untrue.

"7. That this plaintiff prior to the publication of said false, libelous, and defamatory communication, rightfully enjoyed the respect, confidence, and esteem of the public, and rightfully enjoyed the reputation of being an able, honest, and honorable member of the Supreme Court, and ethical, capable and trustworthy member of the bar of this state.

"8. That as a result of the defendants' act in publishing said false, libelous, and defamatory communication, this plaintiff suffered great embarrassment, humiliation, and mental anguish, and his reputation and standing as a citizen, an attorney and Justice of the Supreme Court were greatly damaged and impaired, all to this plaintiff's great damage and detriment in the amount of $50,000.

"9. That this plaintiff did, on the 12th day of September, 1927, file suit against the defendants, and each of them, on the same and identical cause of action in the district court of Oklahoma county, which action failed otherwise than on its merits by reason of a dismissal without prejudice having been entered on the 24th day of December, 1927."

The second cause of action is based upon the fact that the advertisement was published on the 31st of October, and the third cause of action is based upon the fact that the advertisement was published the 1st day of November, 1926, and the fourth cause of action is based upon the fact that the advertisement was published on the 2nd day of November, 1926. In each of the second, third and fourth causes of action the plaintiff repleads and makes a part thereof the first, second, third, fourth, sixth, and ninth paragraphs of the first cause of action.

The plaintiff prays for judgment in the sum of $50,000 on each cause of action.

The theory of the plaintiff appeared to be that, when the advertisement referred to "certain members of the Supreme Court," the plaintiff was one of those members; in fact, the plaintiff in his petition specifically sets forth, and the foundation was laid for the purpose of designating the plaintiff as one of those "certain members."

In paragraph 4 of the plaintiff's petition, the plaintiff uses this specific language, to wit:

"That the fact that the defendant O. O. Owens had so sued and specifically charged and identified this plaintiff in said suit as being **one of the certain Justices of the Supreme Court** who he claimed and contended had been guilty of willful misconduct in office, was thereby published and advertised by the defendant The World Publishing Company, a corporation, in the Tulsa Daily World, to the various subscribers, purchasers, and readers, on the 24th day of June, 1926."

If you will refer to the petition you will notice that right at the close of the advertisement, the plaintiff specifically makes the following allegations, to wit:

"That the phrase and reference to 'certain members of the Supreme Court' contained in said libelous and defamatory article above quoted, was by reason of the action of the defendant O. O. Owens, in charging and attacking this plaintiff in his pamphlet or booklet 'Done in Oil,' and by reason of the defendant O. O. Owens having filed suit in the district court of Tulsa county against this plaintiff, charging this plaintiff with willful misconduct in office; and by reason of the action of the defendants World Publishing Company and Eugene Lorton, stating and publishing in the Tulsa Daily World, that the defendant O. O. Owens had so sued this plaintiff and had so charged this plaintiff in said action with willful misconduct, bribery, and corruption in office, **caused each and all of the readers of the above-quoted libelous and defamatory article to know and understand that portion of the charge referring to 'certain members of the Supreme Court,' as referring to this plaintiff.** That this plaintiff has for a number of years been and is now a legal resident of Atoka county, Okla., and intimately and well known to the citizens of Atoka county."

Therefore, by that part of the plaintiff's petition, he certainly goes on the theory that the words "certain members of the Supreme Court" have reference to the plaintiff. Thus the plaintiff has elected to go on the theory that the article is not libelous per se as to each and every member of the Supreme Court, but has limited himself as coming within the phrase "certain members of the Supreme Court."

In order for the plaintiff to bring the article home to himself, and to show that he

was referred to by the phrase "certain members of the Supreme Court," he pleads all kinds of extraneous matters and pleads "inducement" and "colloquium" and "innuendo." Had the plaintiff based his lawsuit upon the theory that the article was libelous per se as to each and every member of the Supreme Court, then it would have been unnecessary for the plaintiff to have pleaded all of the extraneous and outside matters that he did plead. It seems to be clear that the plaintiff must have believed that the article was libelous per quod, and not libelous per se, but he did not ask for any special damages, but only asked for general damages.

Now, let us see just what the court has heretofore held in Oklahoma.

In the case of Kee v. Armstrong, that is first reported in (dead opinion) 151 P. 572, in an opinion written by Commissioner Brett, the language of the first paragraph of the syllabus is as follows, to wit:

"In determining whether language is libelous per se, it must be viewed, stripped of all innuendo, colloquium, or extrinsic or explanatory circumstances. The meaning of the phrase 'per se' is 'taken alone, in itself, by itself,' and words which are libelous per se do not need an innuendo; and, conversely, words which need an innuendo are not libelous per se. And where an innuendo must be pleaded, in order to state a cause of action, it is self-evident that the language, taken alone, in itself, by itself, per se, is not libelous."

This case was transferred to the Supreme Court from the Commission and their opinion was adopted in full (175 P. 836). Afterwards a petition for a rehearing was granted and a new opinion was written by Judge N. E. McNeill, but the same decision was rendered even though a new opinion was written, and it is reported in 75 Okla. 84, 182 P. 494, and the fifth and eighth paragraphs of the syllabus in that case are as follows:

"If the alleged defamatory words are not actionable on their face, but derive their defamatory import from extrinsic facts and circumstances, such extrinsic facts and circumstances must be set forth and connected with the words charged by a proper averment. Words not actionable per se may be made to appear actionable by averring such extrinsic facts as will show that they were intended to be slanderous and were so understood. These averments must be distinctly stated in the inducement, and applied to the plaintiff by a proper colloquium, with the intended and understood meaning correctly set out in the innuendoes.

"An 'innuendo' is only explanatory of the subject-matter sufficiently expressed before, and is and can be only explanatory thereof, and cannot extend the sense of the words beyond their own meaning unless something is put upon the record for it to explain, nor cannot make a thing certain which is in fact uncertain nor enlarge or restrict the meaning of words, nor introduce new matter."

The second paragraph of the case of Wiley v. Oklahoma Press Publishing Co., 106 Okla. 52, 233 P. 224, is as follows, to wit:

"In determining whether the article is libelous per se, the article alone must be construed, stripped of all insinuations, innuendo, colloquium, and explanatory circumstances. The article must be defamatory on its face 'within the four corners thereof'."

In the case of Matthews v. Oklahoma Publishing Co., 103 Okla. 40, 219 P. 947, the sixth and seventh paragraphs of the syllabus are as follows, to wit:

"If alleged defamatory words are not actionable on their face, but derive a defamatory import from extrinsic facts and circumstances, which are pleaded by way of inducement, colloquium, and innuendo, it becomes the duty of the trial court to determine whether the language used in the publication can fairly and reasonably be construed to have a meaning imputed to it by the pleader, and the court must determine that the words are susceptible of the meaning attributed to them by the pleader before the defendant can be put upon his proof to a jury.

"Where no special damages are alleged in the petition, if the publication complained of is not libelous per se, then a demurrer interposed to the petition should be sustained by the court."

In the case of Hargrove v. Oklahoma Press Publishing Co., 130 Okla. 76, 265 P. 635, we take the following from the opinion in the case:

"Does the published article contain libel actionable per se? The term 'per se' means 'by itself; simply as such; in its own nature without reference to its relations' (Standard Dictionary); and, in connection with slander and libel, the term is applied to words which are actionable because they, of themselves, without anything more, are opprobrious. In other words, a publication is actionable per se when the language used therein is susceptible of but one meaning, and that an opprobrious one, and the publication on its face shows that the derogatory statements, taken as a whole, refer to the plaintiff and not to some other person. Kee v. Armstrong Byrd Co., supra; Rowan v. Gazette Printing Co. (Mont.) 239 P. 1035."

Many more decisions from Oklahoma might be cited along the above line, but that

should be sufficient. It must be kept in mind that the plaintiff's name was nowhere mentioned in the article. Another thing, and that is that the courts of Oklahoma are committed to the doctrine that there is a difference beween "libelous per se" and "libelous per quod," and also that, in order to recover, if it is libelous per quod, special damages must be alleged and proven.

In the brief of the defendants in error, on page 64, there is this language:

"That portion of the article referring to certain members of the Supreme Court did refer to the plaintiff, and the fact that it did refer to the plaintiff and was so read and understood, could be established by showing the facts and circumstances surrounding **the publication of the article.**"

Thus it will be seen again that the plaintiff was not relying upon the theory that each and every member of the Supreme Court was libeled, but that "certain members of the Supreme Court" were libeled, and that the plaintiff was one of those "certain members."

On page 83 of the brief of defendant in error, there is cited the case of Children v. Shinn (Iowa) 150 N. W. 864, and this quotation is as follows, to wit:

"A sweeping charge of misconduct leveled against a public board, without exception, necessarily points the finger of condemnation at every member thereof, though none are named; and every member of the board may maintain an action therefor."

Another case cited is Wofford v. Meeks (Ala.) 55 L. R. A. 214, and the article in this case was held to be libelous as to each member of the county commissioners, because it imputed to each member of the county commissioners prostitution of the finances of the county.

Another case cited, Levert v. Daily States Publishing Co. (La.) 23 L. R. A. (N. S.) 726. In this case a sweeping charge of official favoritism and misconduct was leveled against each member of the board without exception. Many other cases are cited, and I have tried to read and analyze the cases and apply the law as laid down in those cases to the published article in the case at bar, but I am not convinced that the article is libelous as to each member of the Supreme Court, even though the plaintiff had pitched his action upon that ground.

We might mention here the case of Fenstermaker v. Tribune Pub. Co. (Utah) 43 P. 112, 35 L. R. A. 611. The article in this case referred to the private acts of a whole family, and is not applicable.

We must bear in mind that the advertisement did not refer to any of the private acts of the plaintiff, or of any member of the Supreme Court. It appears on the face of the advertisement that it is a criticism of public officials, and it is therefore privileged, unless it imputes crime.

The third subdivision of section 497 of the 1921 Statutes of Oklahoma, in setting out what is a "privileged publication," is as follows, to wit:

"Third, by fair and true report of any legislative or judicial or other proceeding authorized by law, or anything said in the course thereof, and any and all expressions of opinion in regard thereto and criticisms thereon, and any and all criticisms upon the official acts of any and all public officers, except where the matter stated of and concerning the official act done or of the officer falsely imputes crime to the officer so criticized."

The defendants pleaded as one of their defenses that it was a privileged publication.

If the article imputes a crime to each Justice who was a member of the Supreme Court at the time of the publication of the article, then it is not a privileged publication, but it is libelous per se, provided the article is strong enough to refer to the personnel of the court at the time the article was published. If it does impute a crime to each member of the court, then, each, or any, member of the Supreme Court could maintain an action, and it would not be necessary to plead or prove any extrinsic facts or circumstances except to plead and prove that the plaintiff was a member of the Supreme Court at the time.

On the other hand, if it imputes a crime to "certain members of the Supreme Court," then it would not be libelous per se because you would have to plead and prove extrinsic matters to show who the defendants intended to impute the crime to, or to show that it was intended to impute a crime to the plaintiff, and, in that event, it would not be libelous per se, but it would be libelous per quod, and special damages would have to be alleged and proven, which was not attempted to be done in this case. It must be kept in mind that the name of the plaintiff does not appear in the article, and that but one Justice of the court is named in the article, and that is Judge Mason. In other words, if the article imputes crime to "certain members of the court," then how would any one know who was referred to? A reading of the article would not disclose that fact. If within the four corners of the article you could not

know who was referred to, then it would not be libelous per se.

It was a mean article and should not have been written as it was, and should not have been published, but that is not the question involved. Certain freedom of the press is entirely legal and constitutional, and every mean article published is not libelous, and we cannot let our personal or individual feelings govern. The questions must be decided according to the law as has heretofore been laid down by our Supreme Court.

Nothing was said in the published article to even point to the plaintiff as being the one aimed at; nothing was said in the published article that described plaintiff. It could not be libelous per se to plaintiff unless it imputed crime to each member of the Supreme Court at that time.

After a very careful and long study of the published article, and a thorough reading of the briefs and the law, and applying the law to the facts, I am of the opinion that the article is not libelous per se as to each member of the Supreme Court; that it does not, in and of itself, impute crime to the plaintiff, or to each member of the Supreme Court, and since no special damages were alleged or proven, the demurrer to the evidence should have been sustained, and the action dismissed.

I therefore concur in the conclusion reached, and that is, that the judgment should be reversed and remanded, with instructions to dismiss the action.